ELLEN M. LANDRIGAN, Respondent, v. MISSOURI STATE LIFE INSURANCE COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals.   Opinion Filed October 6, 1922.

1. **INSURANCE: Life Insurance: Insurance Contracts: Construction: Policy Effective on Delivery: Date of Delivery is Date of Contract.** Where the application for a life insurance policy contained the provision "that the insurance hereby applied for shall not take effect until the first premium is paid and the policy delivered" and that the premiums shall be payable annually "after the first year," and there is a provision in the policy that the application and the policy together shall constitute the entire contract and the due date written in the policy is another and different date, the date of delivery of the policy marks the beginning of the effectiveness of the policy, and where the premium is paid for the annual period the policy runs for one year from the date of delivery.

2. ——: ——: ——: ——: ——: **Days of Grace: Begin After Expiration of Paid Premiums.** Where a life insurance policy begins and ends under the premium paid for the yearly term from the date of delivery, and one year thereafter, then the period of grace allowed the insured by the terms of the policy begins on the anniversary of the date of the delivery of the policy with the first payment, or at the end of the year of insurance as it runs under the premium paid, and the date of the policy or due date as written therein does not control as to the insurance period for which the insured paid the premium, and does not control as to the beginning of the days of grace, since the provision allowing thirty-one days of grace to the insured means thirty-one days from the time the premium has been consumed, and carries in force and keeps alive the policy for thirty-one days from the date same has run its course under the paid premium.

3. ——: ——: **Policy Susceptible of Different Constructions: One Most Favorable to Insured Adopted.** The rule on interpretation of insurance policies is that if the policy is so drawn as to require interpretations, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to insured.

4. ——: ——: **Antidating Application by Agent: Terms of Policy not Affected.** Testimony by an insurance agent who solicited the

Landrigan v. Mo. State Life Ins. Co.

insurance that he told insured that he could date his application back so as to give insured the benefit of his previous birthday with a lessor premium, and that the agent wrote such date at the botton of the application, and there is no evidence that insured took any part in the discourse, and the agent did not say anything with reference to when the policy was to go into effect nor anything about when payments should be made before the year was up, did not change the situation that the insurance continued in force for one full year from the date it took effect by the delivery of the policy and the payment of the premium.

5. ———: ———: .Death During Period of Days of Grace: Premium Due Deducted. Where the insured died during the thirty-one days of grace permitted for the payment of his second annual premium, under the terms of the policy the amount of such premium was an indebtedness to the insurer which should be deducted in the settlement of the policy as a death claim.

6. ———: ———: Denial of Liability: Undisputed Debt owing to Insurer: Deductible. In an action to recover on a life insurance policy where the undisputed facts showed that the second year's premium was due and unpaid, it was the duty of the court in directing a verdict to treat the face of the policy as reduced by the amount of such premium and limit the verdict accordingly, and this is so even though defendant stood upon the defense alone that it was not liable for any amount under the policy.

7. ———: ———: Vexatious Refusal to Pay: Undecided Issue: Damages and Attorney's Fees: Not Recoverable. Where there was a provision in an insurance policy that the insurance should not take effect until the delivery of the policy to the insured and payment by him of the first premium, the question of the date when days of grace began to run was an open question, and a question upon which the insurer clearly had the right to seek the answer of the courts without being penalized therefor, and had the right to refuse to pay the policy notwithstanding the repeated demands of plaintiff, and it was error in the trial court in refusing to instruct the jury in such case that no recovery could be had of damages or attorney's fees for vexatious refusal on the part of insurer to pay the loss and in submitting such issue to the jury by plaintiff's instruction.    [See same case 243 S. W. 839.]

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. M. Hartmann,* Judge.

REVERSED AND REMANDED *(with directions).*

*Jourdan, Rassieur & Pierce* for appellant.

(1)  Failure to pay a premium when due forfeits the policy.  Bondurant v. Mo. State Life Ins. Co., 198 S. W. 74;  Ashbrook v. Phoenix Mutual Life Ins. Co., 94 Mo. 72;  Gaterman v. American Life Ins. Co., 1 Mo. App. 300;  Pope v. N. Y. Life Ins. Co., 192 Mo. 383;  Smoot v. Bankers Life, 138 Mo. App. 468;  Marshall v. Life Ins. Co., 148 Mo. App. 677.  (2)  The premium on a life insurance policy is due and payable on the date specifically set out in the policy for the payment of such premium, and the thirty-one days of grace allowed in this policy run from that date and not from the end of one year after the policy is in force.  McConnell v. Provident Savings Life Assur. Society, 92 Fed. 769;  Tibbets v. Mutual Benefit Life Ins. Co., 159 Ind. 671;  Wilkie v. N. Y. Life Ins. Co., 146 N. C. 513;  Bryan v. Nat'l Life Ins. Ass'n, 21 R. I. 149;  Millar v. Western Union Life Ins. Co., 180 Pac. (Wash.) 488.  (a)  Cases holding that the payment of the first premium entitles the insured to one year's protection from the date the policy is delivered and accepted are to be distinguished from this case, where the insured died after the expiration of the year.  Halsey v. Ins. Co., 258 Mo. 659;  Stout v. Mo. Fidelity & Casualty Co., 179 S. W. 993; Wilkinson v. Commonwealth Life Ins. Co., 176 Ky. 833;  Tigg v. Register Life & Annuity Ins. Co., 152 Iowa 720.  (b)  Cases which hold otherwise are distinguishable if there was not understanding or agreement that the policy was to be dated back to the specific date mentioned for the payment of premiums.  Halsey v. Ins. Co. (cited supra) ;  McMasters v. Ins. Co., 183 U. S. 25;  Forch v. Western Life Indemnity Co., 157 Ill. App. 1. c. 248;  Johnson v. Mutual Benefit Life Ins. Co., 143 Fed. 950.  (3)  The policy in suit should be construed as having lapsed.  (a)  It is true that policies are strictly construed against the insurer where the terms are ambiguous, but where the contract is plain and explicit and the terms unambiguous, the court cannot modify those terms by judicial construction. Penn

v. Travelers Ins. Co., 225 S. W. 1033; Taylor v. Loyal
Protective Ins. Co., 194 S. W. 1055; Maupin v. Surety
Co., 220 S. W. 21; Dunn v. Life & Accident Ins. Co., 197
Mo. App. 471; Banta v. Casualty Co., 134 Mo. App. 226.
(b)   Although the cases hold that if parts of the policy
are inconsistent the inconsistent part, if against the in-
sured, will be disregarded; this rule does not apply if
the provisions are explicit and consistent.   Jewett v.
Northwestern Nat'l Life Ins. Co., 112 N. W. (Mich.)
734; Talbot v. Union Central Life Ins. Co., 241 Fed. 669;
Halsey v. Ins. Co. (cited supra), distinguished.   (c)   The
rule announced in Halsey v. Ins. Co. (cited supra), that
where general clauses of the policy are in conflict, the
construction most favorable to the insured will be given,
does not apply  nor abrogate the rule that specific clauses
in writing take preference over printed matter. 13 Corpus
Juris 536, note 87; Am. & Eng. Ann. Cases, 1913-E, 964,
note.   (d)   The court should construe the policy accord-
ing to the actions of the parties to give effect to the policy,
and no construction should be adopted which would hold
that the parties intended to violate the criminal statutes
of the State.   Glover v. K. C. Life Ins. Co., 218 S. W. 907;
Secs. 6139-6140, R. S. 1919.   (4)   The court should deduct
from the amount of a recovery all sums specified in the
policy to be deducted, and the court should not allow
the assessment of damages for vexatious delay unless it
appears that the defense has not been made in good faith,
but for the purpose of harassing or vexing the plaintiff.
To hold otherwise would be to deny the defendant the
right to set up a meritorious defense.   A mere adverse
finding to the defendant will not warrant such damages.
Berryman v. Ins. Co., 204 S. W. 738; Shoe Co. v. Phoenix
Assurance Co., 210 S. W. 42.

*Douglas W. Robert* for respondent.

(1)   (a)   Where insurance policies are ambiguous,
they are to be construed against the company issuing
them.   Kempf v. Equitable Society, 184 S. W. 133-136,

and cases cited. (b) This policy is ambiguous, Cases cited under Point 3. (2) A clause in the application or policy, providing that the policy shall not take effect until delivered or paid for, is valid and the policy does not go into effect until delivered or paid for. Mo. State Life I. Co. v. Salisbury, 279 Mo. 54; Yount v. Ins. Co., 179 S. W. 749; Pierce v. Ins. Co., 174 Mo. 383; Bell v. Mo. State Life Ins. Co., 166 Mo. App. 390; Lyke v. Ins. Co., 187 S. W. 265. (3) The insurance was in full force and effect for a period of thirty-one days after the first full year's insurance had elapsed. The policy was delivered Sept. 17, 1917, and the premium paid Jan. 15, 1918. The policy became effective at the earliest, Sept. 17th and the latest Jan. 15, 1918, hence the date of death, Sept. 26, 1918, was within thirty-one days from the end of the first year's insurance. Lyke v. Ins. Co., 187 S. W. 265; Halsey v. Ins. Co., 258 Mo. 659; Stout v. U. S. F. & C. Co., 179 S. W. 993; McMaster v. Ins. Co., 183 U. S. 25; Prudential Co. v. Stewart, 237 Fed. 70; Stramback v. Ins. Co., 94 Minn. 281; Cilek v. Ins. Co., 97 Neb. 56; Stinchcombe v. Ins. Co., 46 Oreg. 316. (4) By claiming and demanding that the second year's premium should be deducted from the amount due under the policy, the insurance company admits the face of the policy is payable and is estopped to deny that it is liable. Johnson v. Dakota Ins. Co., — Ind. 167; Loftis v. Pac. Md. Co., 38 Utah, 532; Williams v. Empire Ind. Co., 8 Ga. App. 303. (5) It was proper to submit the question of vexatious delay to the jury. Barber v. Ins. Co., 269 Mo. 21; Fay v. Ins. Co., 268 Mo. 373; Keller v. Ins. Co., 198 Mo. 440; Brown v. Ins. Co., 45 Mo. 227; Hicks v. Ins. Co., 196 Mo. App. 162.

DAUES, J.—The original opinion herein was delivered on September 19, 1921, and will be found unofficially reported in 234 Southwestern Reporter, 1042. Thereafter our record went to the Supreme Court on *certiorari*, where, upon a review thereof, that court

quashed so much of our said opinion as approved the allowance of damages and attorneys' fees as for vexatious refusal on the part of defendant to pay the loss. [See State ex rel. Missouri State Life Insurance Company v. Allen, et al., 243 S. W. 839.] We have therefore modified our opinion in conformity with the ruling and mandate of the Supreme Court. The opinion as so modified, together with our disposition of the case under a stipulation of counsel, follows:

"Plaintiff, the widow of John A. Landrigan, brings this suit to recover as beneficiary in a life insurance policy taken out by the husband from the defendant company. The judgment of the trial court was for the plaintiff. Defendant appeals.

"The facts are undisputed. The decision of the case rests upon the construction of the policy. The court below gave a peremptory instruction to the jury to find for the plaintiff for the full amount of the policy, $2000 with interest from October 24, 1918, and authorized the jury to allow attorney fees and damages for vexatious delay. The verdict was for $2755, made up as follows: Amount due under policy, $2000; interest, $55; damages, $200; attorney fees, $500.

"It is agreed that Landrigan, on the 12th day of September, 1917, applied to the defendant company for a policy of insurance. He gave the date of his birth as February 15, 1876. The agent, James F. Halley, who secured the application, testified that he told the insured at the time that by dating back the application to August 14, 1917, which was a date nearer to Landrigan's forty-first birthday, he could have something on the annual premium. The exact testimony on this point we will later set out.

"The application was dated August 14, 1917. On September 12, 1917, the company issued the policy whereby the life of Landrigan was insured for $2000, applying the rate on the age of forty-one years. The policy was delivered September 17, 1917, and the insured at that time signed the usual form receipt for same.

"The policy contained the following provisions:

" 'This insurance is granted in consideration of the application herefor, a copy of which is attached hereto and made a part hereof, and of the payment in advance of sixty-eight and 20/100 dollars, being the premium for the first year's insurance under this policy ending on the fourteenth day of August, 1918, which is term insurance. The insurance will be continued thereafter as whole life insurance upon the payments of the annual premium of sixty-eight and 20/100 dollars, on or before the fourteenth day of August, in every year during the continuance of this policy.

" '    . . . If any premium is not paid when due, this policy shall cease and determine, except as hereinafter provided.

" 'If any premium after the first is not paid on the date when due, this policy will continue in full force from said due date for the term of thirty-one days, which is the period of grace allowed hereunder, without interest charge, in the payment of any such premium.'

"The application contained the provision 'that the insurance hereby applied for shall not take effect until the first premium is paid and the policy delivered to and accepted by me during my lifetime and good health,' also, that the premium shall be payable annually 'after the first year.' There is a provision in the policy that the application and the policy together shall constitute the entire contract.

"The insured died on September 26, 1918, without paying anything after the first annual payment. The annual premium for the policy at the age of forty-two years on a $2000 policy would have been $70.64, and by dating the application back to August 14th, the premium was $68.20. It was shown at the trial that demand had been made for the payment of the policy on October 24, 1918. The company insisted that the policy had lapsed because the second premium was not paid on the due date (August 14, 1918), nor within the thirty-one days

after such date, and that notice had been sent to the insured to pay the premium.

"It is necessary that we have clearly before us the dates which are important:

"August 14, 1917, application was dated.

September 12, 1917, policy was issued.

September 17, 1917, policy was delivered.

August 14, 1918, due date, as stated in the policy.

September 14, 1918, thirty-one days from due date, (as stated in the policy).

September 15, 1918, when year's term insurance expired.

October 16, 1918, thirty-one days from end of one year's term insurance.

September 26, 1918, insured died.

"The solution of this case rests in the answer to the question: When did the period of thirty-one days of grace begin under this policy? If the term of grace began from and after the due date as written in the policy, that is, the date denominated 'due date' in the policy, then of course it ended on the 14th day of September, 1918. If, on the other hand, it runs from the anniversary of the delivery date, then it ended October 17, 1918. The death having occurred on September 26, 1918, if the first hypothesis is correct, the insurance lapsed; if the latter is true, then the insured died within the days of grace and the policy was in force.

"It is apodeictical that if the premium was not paid when *due*, then the policy lapsed. It was due either at the time denominated as the due date on the face of the policy, or on the anniversary of its delivery to the insured with thirty-one days' grace from such accepted date.

"The plaintiff asserts that the application for the insurance, made a part of the policy, provided that the policy should not take effect until delivery, and since the policy was not delivered until September 17, 1917, the insurance continued until September 17, 1918, and for thirty-one days thereafter. Landrigan having died on

September 26, 1918, such death was within the reach of the policy, and relies upon the Missouri cases of Halsey v. Insurance Co., 258 Mo. 659, 167 S. W. 951, and Stout v. Mo. Fidelity & Casualty Co., 179 S. W. 993, and upon other authorities which we will later discuss.

"The Halsey case—In that case the application was dated May 24, 1906; the policy was dated May 31, 1906, and delivered June 5, 1906. There was a tender of the second premium by a brother of the insured on May 31, 1907. The insured died on June 5, 1907. The policy provided that the annual premium was 'payable in advance on the 24th day of May.' The company had notified Halsey in writing that the second annual premium would be due on May 24, 1907. Pertinent excerpts from that policy are as follows:

" 'The annual premium to be made payable in advance on the 24th day of May.

'That if any premium on said insurance shall not be paid when due all prior payments shall be forfeited to the company except as provided for in its policy.

'That all premiums on any policy issued on this application shall be annual premiums.

'That failure to pay any premium . . . at the time same becomes due . . . shall render any policy issued upon this application void.

' . . . hereby insures the life of Augustus C. Halsey . . . for a period of one year from the 24th day of May, 1906, and in consideration of the further payment in cash of $307.00, on or before the 24th day of May and every year thereafter . . .'

"There was a clause in the policy that same should take effect upon its delivery and payment of the first premium. It was held, although the policy on its face provided that the annual premium was payable in advance on the 24th of May, that the insurance began on the date of the delivery of the policy, to-wit, July 5th, and on which date the first annual premium was paid, and that such policy ran and was in force for a full year thereafter, or until the 4th day of the next June, and

that the tender made on the 31st of May was timely. Said Judge WOODSON for the court in this case:

" 'While this record discloses the fact that the application for the insurance of the deceased was dated May 24, 1906, and that the premiums were payable upon that date, yet that was not all of the contract between the parties. The policy itself was just as important a factor in the agreement as was the application for the insurance. The policy was dated May 31, 1906, but it was not delivered until June 5th of that year, which by its express terms was not to become effective until delivered, and the first annual premium paid, which was done on June 5, 1906.

" 'Under the terms of this contract, which consisted of the application and the policy issued in pursuance thereto, the deceased was clearly insured for one full year from June 5, 1906, to the last minute of June 4, 1907. That being unquestionably true, and the tender made of the second premium by the brother of the deceased on May 31, 1907, while the policy was still in full force and effect, was clearly made within the time agreed to by the parties, if the entire contract is to be considered as a whole.

" 'If this is not true then by parity of reasoning advanced by counsel for appellant, the policy was never in force, for the simple reason that the first premium was not paid on May 24, 1906, but was paid on the 5th of June, 1906, the date of the policy, by its terms, went into effect. This very act of the parties, under the facts and circumstances in the case, puts a practical construction upon the contract made and entered into between them, namely, that each succeeding annual premium should be paid during the life of the policy, and thereby keep it in full force and effect for the period of time stated therein.

" ' If this is not the true meaning of the parties then the appellant is driven to the conclusion that the deceased paid for full year's insurance, but under the terms

of the policy he was only entitled to about eleven and one-half month of insurance.

" 'This, nor any other court, should allow an insurance company to thus stultify itself after taking the premium for a full year, and then escape liability by interposing the technical question that by the application for the policy the insured agreed to pay the premium long before it was due.'

"In the Stout case, the court considered a policy which stipulated that same should become effective at 12 o'clock noon, on the date of its delivery. The delivery was made June 4th, but the policy provided that payments must be made in advance on July 1st and on the first day of each month thereafter, and it was to remain in force only so long as the premiums were paid in advance on the first day of each month. The insured paid the premium on July 1st and August 1st, but the September 1st premium was not paid. The insured died before noon on September 4th. This court, through Judge Nortoni, said that the policy must be construed as taking effect on June 4th, which was the date of the delivery of same, notwithstanding the specific provision in the policy that the premium should be paid on the first day of the month, and that the insurance was for thirty days from the date of the delivery of the policy, and rejected the requirements in the policy that the premium should be paid on the first day of each month, resting the decision upon the Halsey case. It was the court's view that the insured had paid for one month's insurance from August 4th, and was therefore insured up until September 4th, notwithstanding the due date as written in the policy.

" 'It is clear from these two Missouri authorities that the Landrigan policy did not become effective on August 14, 1917, but began on the date of delivery, September 17, 1917, and had the insured died within one year of September 17, 1917, the beneficiary certainly would have been entitled to the insurance, because the insured had paid for one full year's insurance from September 17,

1917. This seems to be conceded by appellant. The cases cited on this point all run back to McMasters v. New York Life Ins. Co., 183 U. S. 25, (reversing New York Life Ins. Co. v. McMasters, 87 Fed. 63, opinion by Judge SANBORN), either as following or as distinguishing it.

"In that case the applications were dated December 12th, the policies December 18th, and were delivered December 26, 1893. The policies contained the clause that same should become effective on delivery and payment of the first premium. They contained a provision for one month's grace. The insured died January 18, 1895. He failed to pay the second premium. The insurance company refused to pay because the insured had failed to pay the premium within thirty days after December 12th, the *due* date specified in the policies. There was, however, an element present in that case which is not now before us. In the McMasters case the company's agent interpolated in the application without the authority of the applicant a request that the policy be dated the same as the application, and when the policies were delivered to the insured the agent made certain untrue representations to him. But in passing upon that case, Chief Justice FULLER reasoned closely to the principle involved in the case at hand, in the following language (l. c. 40):

" 'Each of these policies recited that it was made in consideration of the written application therefor, which was made part thereof, and of the payment in advance of an annual premium of $21, 'and of the payment of a like sum on the 12th day of December in every year thereafter during the continuance of this policy.'

"Does this latter provision require payment of an annual premium during the year already secured from forfeiture by payment made in advance?

"May not the words 'in every year thereafter' mean in every year after the year, the premiums for which have been paid? Or, in every year after the current year from the date of the policy?

"At all events, if the payment in advance was a payment which put in force a contract good for life, determinable by non-payment of subsequent premiums, and this first payment was payment of the premiums for a year, could the requirement of payment of a second annual premium within that year be given greater effect than the right to cancel the policies from January 18, 1895, if such payment were not tendered until after the lapse of thirteen months from December 12, 1893?

" 'To hold the insurance forfeitable for non-payment of another premium within the year for which payment had already been fully made would be to contradict the legal effect under the applications and policies of the first annual payment. Clearly, such a construction is uncalled for, if the words 'the 12th day of December in every year thereafter' could be assumed to mean in every year after the year for which the premiums had been paid. But if not, taking all the provisions together, and granting that the words included December 12, 1894, nevertheless, it would not follow that forfeiture could be availed of to cut short the thirteen months immunity from December 18, 1893, as the premiums had already been paid up to December 18, 1894. And the company could not be allowed, on this record, by making the second premiums payable within the period covered by the payment of the first premium, to defeat the right to the month of grace which had been proffered as the inducement to the applications, and had been relied on as secured by the payment.

"The truth is the policies were not in force until December 18, and as the premiums were to be paid annually, and were so paid in advance on delivery, the second payments were not demandable on December 12, 1894, as a condition of the continuance of the policies 'from the twelfth to the eighteenth.'

In the case of Prudential Ins. Co. v. Stewart, 237 Fed. 70, the application was made on February 2nd, but bore the date February 19th, and was not delivered until April 15th, at which time the premium was paid. The

application contained the usual clause that the policy should not take effect until delivery of policy and payment of the first premium. The policy itself fixed the due date as the 19th day of February, May, August and November, being the quarterly periods following. One month's grace was allowed during which time the policy was to remain in force. The insured died on July 19th within the period of grace, if the three months' period be reckoned from the date of the delivery of the policy and the payment of the first premium, instead of the due date as stated in the policy. The U. S. Circuit Court of Appeals held that as the language of an insurance policy, is to be construed most favorably to the insured, and as there were two possible interpretations, the date of the delivery of the policy and the payment of the first premium should be deemed as marking the date on which the policy became effective and the premium became due, and accordingly the period of grace began on that date. The court said:

" 'The contract of insurance in the present case contained, as we have seen, two inconsistent provisions: one that the policy took effect only upon the issuance and delivery thereof and the premium was to be payable on such delivery and thereafter quarter-annually; the other that the premiums were to be paid on the 19th day of February, May, August and November in each year. The contract was fairly susceptible of two different constructions. This court would not be justified in ruling that the insured had not the right to assume that the first provision was controlling.' [See Thompson v. Phoenix Ins. Co., 136 U. S. 287.]

"In Strambach v. Ins. Co., 94 Minn. 281, the policy required the semi-annual premium to be paid September 8th, the date of the policy. It was not delivered until the 24th of that month. It contained the usual effective-on-delivery clause. The insured died September 11. It was insisted that as the policy was not delivered and paid for until September 24th, the insurance began to run from that date. The policy contained a clause that

if any premium be not paid when due same should be-
come void, and the court said:

" 'Having determined that the insurance period paid
for began September 24, 1902, it follows that it would
have expired March 24, 1903, had the premium not been
paid, and therefore the policy remained in force until
forfeiture by non-payment of the next semi-annual in-
stallment.   The insurance period covered by the first
and second premiums expired September 24, 1903, and,
the insured having died September 11, the policy was in
force unless forfeited by a failure to make the payment
due September 8.   Whether it was forfeited depends
upon the meaning of the language chosen to express the
forfeiture, which reads:

" 'If any premium be not paid when due, this policy
shall be void until duly reinstated during the lifetime
and in good health of the insured .'

" 'In our judgment, this language was used with
reference to the continuation of the policy for the period
already paid for.   Forfeitures are not favored by the
law, and any other conclusion would work a hardship
upon the insured and should not be upheld unless re-
quired by the terms of the contract.' ,

"In Cilek v. Ins. Co., 97 Neb. 56, the policy allowed
days of grace. The application was dated June 13th, the
policy dated June 23rd and was delivered on June 26,
1899.   The premium due in June, 1906, was not paid, and
the insured died July 3, 1906.   The policy contained the
effective on delivery and payment clause, and premiums
were to be paid June 13th.   The court said 'the contract
of insurance was, therefore, never a contract binding
upon both parties prior to, at the earliest, June 23.   If
the contract of insurance did not become binding until
June 23, the death of the assured on July 23 was within
the month of grace allowed, and the policy had not
lapsed."

"The opinion proceeds:

" 'We, therefore, hold that the contract of insurance
in the case at bar did not go into effect until June 23,
1899; that the payment of premiums for each succeeding

year down to and including the payment in June, 1905, extended the life of the policy for an additional year from June 23, and that with the one month's grace added to June 23, 1906, the policy had not lapsed, but was in full force and effect at the time of Mr. Rye's death.'

"In Stinchcombe v. Ins. Co., 46 Oreg. 316, the application was dated May 5th, the policy July 10th and was delivered on July 24, 1894. The premium was paid on the day the policy was delivered for two years in advance. On the face of the policy was written that the due date was to be May 5th in each year. The insured died July 3, 1896. Unless the premium was paid on or before the due date, same was to become void. There was the clause that the policy should not be in force until issued and the first premium paid. The policy also contained the clause that a month's grace should be allowed in paying premiums.

"The court held that the insurance became effective for the entire term of the policy, subject to the provision prescribing forfeiture for non-payment of premiums on July 24th, and while the death in that case occurred within two years from the date of delivery, the court treats the delivery date, to-wit July 24th, as the due date of the policy from which forfeitures and the extension as days of grace should be reckoned.

"Appellant cites us to authorities to sustain the opposite view. Two of the cases—Wilkinson v. Ins. Co., 176 Ky. 833, 197 S. W. 557, and Forch v. Ins. Co., 157 Ill. App. 234—are in point, and reach a result contrary to the cases discussed by us supra. The other cases cited we do not think are of influence in the case.

"Much reliance is had by appellant on the case of McConnell v. Ins. Co., 92 Fed. 769, opinion by Judge TAFT. In that case it was held that the policy did not take effect on delivery, but it must be considered that there was no such clause in the insurance contract as is before us, and hence no ambiguity existed. By the express terms of that policy the dates of payment were fixed. The provision that the policy was to become ef-

fective upon delivery and payment was absent. This is likewise the distinguishing feature in most, if not all, of the other cases cited and relied upon by appellant.

"The reasoning to the result in those cases is well expressed in the language of the court in the case of Wilkie v. Ins. Co., 146 N. C. 513, wherein the court said:

" 'When the policy itself covers a period antecedent to its date, and does not specify the contingency upon which it shall take effect the date of the policy or its actual delivery becomes of little or no importance in determining when the insurance takes effect.'

"In other words, there being no provision in the policy or the application that the policy should take effect upon delivery and payment, it follows that the due date as written in the policy controls. It could not be otherwise.

"Our Supreme Court in the Halsey case, and this court in the Stout case, adopted the rule of construction in insurance policies, that where the policy (or the application, a part of the policy) contains the usual 'effective on delivery and payment' clause, and the due date written in the policy is another and different date, that said date of delivery of the policy marks the beginning of the effectiveness of the policy. Where the premium is paid for the annual period, the policy runs for one year from said date. And from the authorities we have reviewed, we are persuaded to believe the correct rule to be that the period of grace begins at the termination of the date for which the insurance was actually paid by the insured. That is to say, if the policy begins and ends under the premium paid for the yearly term from the date of delivery and one year thereafter, then the period of grace allowed the insured begins on the anniversary of the date of delivery of the policy with the first payment, or at the end of the year of insurance as it runs under the premium paid. If under our law the date of the policy, or due date as written in same, does not control as to the insurance period for which the insured paid the premium, then this due date written in the policy does

not control as to the beginning of the days of grace. The provision allowing a month's grace to the insured means a month from the time that the premium has become consumed. In other words, it carries in force and keeps alive the policy one month from the date same has run its course under the paid premium. This follows the reasoning in the Halsey case, and adopts the better reasoned cases from other jurisdictions, and is consonant with what was said by the Supreme Court of the United States in the McMasters case.

"Landrigan, under the premium paid by him, was insured from September 17, 1917, until the last minute of September 16, 1918. This cannot be doubted in the face of the controlling decisions in our State. Now, if he was insured on his paid premium for that period in disregard of the due date as written in the policy, to-wit August 14th, then it follows, as the night follows the day, that the extension by way of grace above and beyond the term covered by the premium began September 17, 1918, and this policy allowing thirty-one days' grace, carried the policy to and beyond September 26, 1918.

"We therefore hold that the court below correctly construed this policy. In reaching this conclusion we have had before us the rule on interpretation of insurance policies which is universally applied in this State and elsewhere. It is, that if the policy is so drawn as to require interpretation and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. It is unnecessary to explain that this rule is a just one.

"It is said, however, by the appellant that the insured in making this contract had a conversation with the insurance agent which changes the situation. The facts are that the agent, Halley, when he solicited this insurance in the course of the conversation with the insured said, according to the agent's testimony:

"'Mr. Sullivan (Q): Now, tell the jury what was said between you and Mr. Landrigan that day about dating this application back?

" 'A. Well, in soliciting Mr. Landrigan for this insurance I told him I could date his application back to the 14th day of August and still give him age 41, which would save him something like a couple of dollars and something on a two-thousand-dollar policy.

"The policy was written as being near the 41st birthday and with a lesser premium. There is no evidence that the insured took any part whatsoever in this discourse, and it should be noted that the agent did not say anything with reference to when the policy was to go into effect, nor anything about when the payments should be made before the year was up. The agent wrote the application himself and dated it, and *nothing* was contained in the application as to due date of the policy. At the bottom of the policy the agent wrote the date August 14, 1917. The effect of this conversation between the agent and the insured is that the agent volunteered a statement to the applicant that he, the agent, could date the application, that is, the initial step of the transaction, back to August 14th, so as to make it appear that the insurance was applied for in August instead of September. The application contained no reference to the dates premiums were to be paid, but the statement of the agent related solely to his intention to date the application of the insured back to August 14th. We do not think this changes the situation. It is true that when the policy was presented to the insured it contained the due date as August 14th. It also contained a provision (by the terms of the application) that the insurance would not become effective until the policy was delivered and the first premium paid. And as we have above indicated, our Supreme Court has decided that the latter date controls when these two inconsistent provisions appear in the contract. If this latter date controls as to the life of the policy under the premium, then it also controls as to the life of the days of grace. The days of grace cannot begin at a time when the policy is alive and in force under the paid premium, but begins only when the policy has run its limit under the paid premium, and

runs as days of grace above and beyond the time during which the policy was in force under the premium. The insured had insurance as a matter of right under the premium until September 17, 1918, and during the period that he had insurance as a matter of right, he could not be given insurance as a matter of grace, for grace is used in contradistinction to right. Thirty-one days of grace was a time of indulgence granted, and it was not an indulgence until after the expiration of the insurance as a matter of right.

"We have considered appellant's point that the due date (August 14th) was written into the policy with a typewriter, and that therefore same should take preference over the printed matter concerning delivery, etc. We do not think this of merit.

"Finally, appellant points out that the court directed a verdict for the full amount of the face of the policy, to-wit: $2000, and that in any event a deduction of the second year's premium should have been made.

"The policy is for two thousand dollars, and contains these provisions:

" 'Any indebtedness hereon to the Company will be deducted in any settlement of this policy  .  .  .

" 'In the settlement of this policy as a death claim, any unpaid premiums or unpaid part of a premium for the current policy year in which death occurs shall be considered as an indebtedness hereon to the Company.'

"We find no ambiguity thrown around these provisions by anything contained in the policy or the application. It was therefore plainly the duty of the court, from the undisputed facts as introduced by plaintiff herself (the second year's premium being admittedly due and unpaid), to treat the face of the policy as reduced by the premium for the second year, to-wit $68.20, and limit the verdict on that item to $1931.80, This is so even though defendant stood upon the defense alone that it was not liable for any amount under the policy.

"Since the preparation of this opinion, the Kansas City Court of Appeals, in Chestnut v. Insurance Co.,

232 S. W. 203, has considered the Halsey case as controlling in the same light as we entertain of that decision, and that court there reached a conclusion which comports with the reasoning in the instant case.''

In conformity with the decision of the Supreme Court on *certiorari* herein, we rule that the trial court erred in refusing to instruct the jury that no recovery could be had of damages or an attorneys' fee for vexatious refusal on the part of defendant to pay the loss, and in submitting this issue to the jury by plaintiff's instruction.

Since the mandate of the Supreme Court reached this court, counsel have stipulated that the judgment be reversed and the cause remanded with directions to enter judgment in favor of plaintiff and against defendant for the sum of $2322.19, (being the amount recoverable on the policy, viz. $1931.80, with six per cent interest from October 24, 1918, aggregating $457.84, less $67.45, the cost of printing appellant's abstract.)

The judgment is therefore reversed, and the cause remanded, with directions to enter judgment for $2322.19, in accordance with said stipulation. *Allen, P. J.,* and *Becker, J.,* concur.