## GREAT SOUTHERN LIFE INS. CO. v. ALCORN.

### No. 13089.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 18, 1935.

Rehearing Denied Feb. 15, 1935.

Vinson, Elkins, Sweeton & Weems and Fred R. Switzer, all of Houston, and Hamp P. Abney, Jr., of Fort Worth, for appellant.

McLean, Scott & Sayers and Glover Johnson, all of Fort Worth, for appellee.

LATTIMORE, Justice.

This is an appeal from a judgment in favor of the beneficiary in a life insurance contract, and involves whether that contract was in force at the death of the insured.

W. W. Alcorn signed, at Fort Worth, an application to appellant for the policy sued on, on July 29, 1931. The application was personally delivered to appellant's agent. The appellant on August 7, 1931, executed a policy of life insurance and mailed it to the agent who had removed to the state of Kansas. On August 10, 1931, the agent mailed the policy addressed to Alcorn at Fort Worth. It was returned to the agent undelivered. It was again by him mailed to Alcorn, again returned undelivered, and on the third mailing was received by Alcorn on November 18, 1931. The next annual premium was due, according to the terms of the policy, on August 7, 1932. That premium was not paid. Alcorn died September 29, 1932.

The application for the policy contained the following statement: "The insurance hereby applied for shall not take effect until a written or printed policy shall have been actually delivered to and accepted by me while I am in good health, and the first pre-

mium shall have been actually paid during my lifetime and while I am in good health."

Alcorn was in good health at all times from July 28 to November 19, 1931, and paid the first premium with the application.

The first question is whether the contract was in effect before November 18, 1931. This question involves two subdivisions: (1) The effect of the issuance of the policy and its delivery to the agent; (2) the mailing of same to Alcorn when the mails failed to deliver the same to him and returned it to the agent.

There are many decisions bearing on this question and divided in their persuasion as to the decision to be reached. Sov. Camp, W. O. W., v. Dees, 45 Tex. Civ. App. 318, 100 S. W. 366; Pledger v. Sov. Camp, W. O. W., 17 Tex. Civ. App. 18, 42 S. W. 653; Protective Mutual Benefit Ass'n v. McCuistion (Tex. Civ. App.) 66 S.W.(2d) 511; Fidelity Mutual Life Ass'n v. Harris, 94 Tex. 25, 57 S. W. 635, 638, 86 Am. St. Rep. 813; American Home Life Ins. Co. v. Melton (Tex. Civ. App.) 144 S. W. 362; Victory Life Ins. Co. v. Ferrell (Tex. Civ. App.) 24 S.W.(2d) 774; Denton v. K. C. Life Ins. Co. (Tex. Civ. App.) 231 S. W. 436.

■ It seems to us that much of the confusion in these matters arises because the courts are inclined to overlook the fact that, despite the numerous evidences of legislative supervision of the life insurance business, the case is still one in contract. Alcorn, in making his offer to the appellant, reserved the right to accept or reject the written contract of insurance when it reached him, and provided that the contract should not be binding until the actual delivery to, and acceptance by, him of the contract. We can see good reason for such reservation, but that is not so important as is the fact that he had the right to make such an offer and did make it. The insurance company recognized the reservations, some of which were also for its benefit, and all of which were on a form prepared by it and in a form desired by it, and, in mailing the contract to the agent, put a red ink order on its letter to the agent: "Don't deliver this policy unless applicant is in good health—make a personal investigation and return policy to company at once if applicant is found to be ill or has been since date of application." Of course, secret instructions to the agent would not be binding on Alcorn, Missouri State Life Ins. Co. v. Woodson (Tex. Civ. App.) 256 S. W. 988, but that is not the question before us. We are seeking to find: On what did the minds of the parties meet as evidenced by their conduct? If the inquiry were as to fraud or estoppel, the rule against secret instructions could be invoked by Alcorn, but not by the appellant in this case. The language is plain. The agent received the contract with instructions that, acting for appellant, he was to make a personal investigation and not deliver the policy if he found the deceased physically ill at any time since the application. It may be said by appellant that the appellant left this matter to the determination of the agent, and his decision, evidenced by the mailing on August 10, 1931, removes that obstacle to the effectuation of the contract. But the agent cannot compel Alcorn's accepance, a right which he had and which he did not exercise until November 18, 1931. This holding has been consistently adhered to by this court. American, etc., Ins. Co. v. Melton (Tex. Civ. App.) 144 S. W. 362. It was held in Modern Woodmen of America v. Owens, 60 Tex. Civ. App. 398, 130 S. W. 858, that a condition of this nature in the offer was contractual, and that opinion has been approved in Texas and elsewhere, being cited in numerous Missouri cases and followed. To the same effect are Homesteaders' Life Ass'n v. Booth (Tex. Civ. App.) 285 S. W. 889; Sovereign Camp v. Ayres, 113 Tex. 564, 261 S. W. 1000. There is language in the Harris Case, supra, which gives support to appellant:

"Looking to the whole provision, however, as well as to that contained in the application, we are inclined to view this condition as one generally used in blank policies to cover cases where the first premium has not been paid when the policy issues, but is to be paid subsequently, and to make the obligation of the company begin when payment is made, and subject to the condition of the applicant existing at that time, rather than at the date of the policy, and not as one intended to postpone the taking effect of the policy, when the premium has already been received, and all the terms of the contract agreed upon.

"The character of the risk to be assumed in this case was passed upon in accepting the application, and, as the premium had then been paid and accepted, there was nothing to prevent the immediate conclusion of the contract, subject to the other condition,—that the applicant should be, at the date of the policy, alive and in good health. Story, Confl. Laws, § 279a; Schwartz v. Insurance Co., 18 Minn. 448 (Gil. 404). The general rule is that the acceptance of the applica-

tion and the issuance and mailing of the policy are all the acts that are essential to put the contract in force, and the fact that the policy is sent to an agent for unconditional delivery does not alter the effect of the transaction."

The issue there was whether the contract was made in Pennsylvania, where the policy was executed, or in Texas, where it was delivered. It may be that there were some facts in the record which justified the conclusion that such a condition in the application is "one generally used in blank policies to cover cases where the first premium has not been paid when the policy issues, but is to be paid subsequently, and to make the obligation of the company begin when payment is made, and subject to the condition of the applicant existing at that time, rather than at the date of the policy, and not as one intended to postpone the taking effect of the policy, when the premium has already been received, and all the terms of the contract agreed upon." But without such facts, and none such are in the record at bar, we cannot hold that any such judicial knowledge exists. In that Harris Case the opinion expressly negatives any discretion in the agent to make an investigation of the health of the applicant, whereas, in this case, the appellant gave an especial order to the agent to exercise that discretion. If the Dees and McCuistion Cases, supra, can be distinguished from our views in this case, it is because the Alcorn contract had to be "accepted" by Alcorn after issuance and delivery to him, whereas no such discretion appears in the record in those cases. We are therefore of the opinion that this contract of insurance was not in force until received and accepted by Alcorn on November 18, 1931.

This brings us to the provision of the contract that the next annual insurance premium must be paid on August 7, 1932, and, if same "shall not be paid when due, this policy shall thereupon cease, except as herein provided." The parties could contract for the payment of the second year's premium, to be paid before the expiration of the first year's insurance, could contract for it to be at any date not prohibited by law, and the only provision in the statutes relating thereto is that the premiums must be paid in advance. Therefore, even though Alcorn, on November 18, 1931, had insurance until November 18, 1932, he could agree that, failing to pay his second year's premium on August 7, 1932, his right to such first year's insurance would be terminated.

It is our duty to give effect to all provisions if they can be construed harmoniously. Thus proceeding, we observe that the forfeiture clause above quoted provides that upon such failure the contract shall cease "except as herein provided." We then look to see what such "herein provided" exceptions are. On the first page of the contract the following is said: "This contract is made in consideration of the payment of the first annual premium (or instalment thereof) of One Hundred Fifty-Six and 75/100 Dollars, (being the premium for one year's Preliminary Term Insurance), and the payment of a like annual premium on the Seventh day of August in every year during the continuance of this contract until the death of the insured, or until premiums for Twenty-One years in all have been paid."

It is thus apparent that appellee has especially separated the first year contract from the succeeding life of the contract, and has agreed with the deceased that for the premium already paid Alcorn was to have "one year's Preliminary Term Insurance." Outside the record suggestions are made as to why this distinction exists, but we do not consider them in making our decision. The question is not "Why?" It is only "What did they agree?" The answer is that for the first premium the appellant has made a flat promise of one year's preliminary term insurance. Reading that particular agreement, we believe the same justifies the conclusion that from language of same it was without qualification, and is therefore one of the exceptions "herein provided for," which is not terminated by the failure to pay the subsequent premium in advance. Forfeitures are not favored by the law, and will be strictly construed against the forfeiture. Decker v. Kirlicks, 110 Tex. 90, 216 S. W. 385.

Appellant contends that appellee is estopped because deceased received the policy dated August 7, 1931, and retained the same without complaint as to the date in the policy for its beginning. Just how that misled appellant to its injury we cannot see.

We have considered all assignments of error carefully. The judgment of the trial court is affirmed.