**GREAT SOUTHERN LIFE INS. CO. v. PEDDY.**

No. 3873.

Court of Civil Appeals of Texas. Beaumont.

April 23, 1941.

Rehearing Denied May 7, 1941.

Fred R. Switzer and Vinson, Elkins, Weems & Francis, all of Houston, for appellant.

W. T. McNeill, of Beaumont, for appellee.

WALKER, Chief Justice.

This suit was by appellee, Mrs. Gertrude A. Peddy, the beneficiary, against appellant, Great Southern Life Insurance Company, on the supplemental contracts made a part of two life insurance policies issued by appellant to P. O. Peddy, providing for "double indemnity on accidental death." On trial to a jury, judgment was for appellee for the relief prayed for.

Without giving a detailed statement of the petition and answer, the pleadings were sufficient to protect the rights of the parties under the following facts, which were established without controversy:

(a) The policies were dated November 25, 1933, and policy No. 315214 was for. $1,000, payable in cash in a lump sum on the death of the insured; policy No. 315215 was for $2,750, payable on the death of the insured in monthly payments of $50 for five years. The policies were issued on the written application of the insured, stipulating that the premiums were payable monthly; the monthly premium on the first policy as numbered above was $1.72, and on the second policy $4.74.

(b) The written application on which the policies were issued contained the following stipulation: "That the insurance hereby applied for shall not take effect until a written or printed policy shall have been actually delivered to and accepted by me, while I am in good health, and the first premium shall have been actually paid, during my life and while I am in good health." On authority of that stipulation, and under the following instructions issued by appellant to its agent, Mr. Thompson: "Don't deliver this policy unless applicant is in good health. Make a personal investigation and return policy to Company at once if applicant is found to be ill or has been since time of application." Mr. Thompson delivered the two policies to the insured on the 10th day of December, 1933.

(c) Each of the policies contained the following provisions: "This contract is made in consideration of the payment of the first annual premium (or installment thereof) of (here is stipulated the amount of the annual premium) (being premium for one year's Preliminary Term insurance), and the payment of a like annual premium on the twenty-fifth day of November in every year during the continuance of this contract until the death of the insured. * * * All premiums on this policy shall be payable in advance * * *. Unless otherwise provided all premiums are payable annually, but, by contract in writing, they may be made payable in semiannual, quarterly or monthly instalments. * * * If any premium or any note or other obligation given therefor shall not be paid when due, this policy shall thereupon cease, except as herein provided. One month's grace is allowed for the payment of every premium or instalment thereof after the first without interest charge, during which month this insurance shall continue in force. * * * After premiums shall have been paid for three full years, the Insured may elect any one of the following options, within one month from the date of default in the payment of any premium or premium note: * * * (option c) To accept insurance for the face amount of this policy to continue in force from such date for such term as said Cash Surrender Value, as above defined, will purchase as a net single premium at the age of the Insured at such due date, computed according to the American Experience Table of Mortality, with interest at the rate of three and one-half per cent per annum, but without the right to loans or Cash Surrender Value; * * * If the insured shall not, within one month from the date of default in the payment of any premium or premium note, elect one of the foregoing options, then the policy will automatically be continued in force as in Section (c)."

On the last page of the first policy was the following statement:

"Annual premium $19.26.

"Semi-annual premium $10.02.

"Quarterly premium $5.11.

"Monthly premium $1.72."

And on the last page of the second policy the following statement:

"Annual premium $52.97.

"Semi-annual premium $27.56.

"Quarterly premium $14.06.

"Monthly premium $4.74."

(d) We give the following provisions of the supplemental contracts: "In event of death from accident the Company agrees to increase the amount payable hereunder to (double the amount of the principal contract) upon due proof that the death of the Insured occurs during the premium paying period, while this policy is in full force and effect, before any benefit or value under any of the provisions in this policy other than loans shall have been claimed and allowed, or granted automatically * * *. Failure to pay any premium when due under said policy or this Supplemental Contract shall automatically terminate this contract and all rights hereunder."

(e) The insured paid his monthly premiums on monthly notices from appellant, to the effect that the premiums were due on the 25th day of each month. The last payment made by the insured was on the notice advising him that a monthly premium would be due on the 25th day of March, 1940. All monthly premiums prior to the 25th day of March, 1940, had been paid, and the two policies were in full force and effect as to all provisions of the supplemental contract on that date. No additional monthly payments were made subsequent to the 25th day of March, 1940.

(f) On June 1, 1940, the insured remitted to appellant by check the amount of the monthly premiums, which on its notices to him were due on the 25th day of April, 1940, and on the 25th day of May, 1940. On its construction of the policy contracts, that this payment was tendered after the expiration of the grace period, appellant did not accept the check in payment of the premiums for which it was tendered, and so notified the insured. This notice was not received by him; on the third day of June, 1940, the insured was fatally injured, and died as a proximate result of his injuries on the next day. The insured's injuries fell within the coverage of the supplemental contracts.

(g) On demand, appellant paid appellee the amount due under the principal contracts of insurance, as under option (c), supra, but refused to pay the amount called for by the supplemental contracts. This settlement was made without prejudice to appellee's right to sue for "double indem-nity" under the supplemental contracts, and appellant's right of defense.

(h) Certain questions were submitted to the jury on the issues of waiver, estoppel, etc.

■■ We concede appellant's propositions that the failure to pay any premium when due as extended by the grace period terminated the supplemental contracts, and that the supplemental contracts terminated if the principal contracts, for their validity at the time of the death of the insured, depended upon the extended insurance provided by option (c) of the policies, made a part of our statement above. Meadows v. Continental Assurance Co., 5 Cir., 89 F.2d 256; Great Southern Life Ins. Co. v. Cunningham, 128 Tex. 196, 97 S.W.2d 692.

We give appellant's third proposition: "By the third proposition we make the point that where the insured and insurer agreed, as the policy evidences, as to the due date of the second and recurring premium payments such agreed due date of payment must control and be binding on the parties, even though it fixes the date of the payment of the second annual premium less than a year after the actual delivery of the policy." We overrule this proposition.

■■ By the express provisions of the insurance contracts, effectuated by Great Southern Life Ins. Co. v. Alcorn, Tex.Civ. App., 80 S.W.2d 429, though dated November 25, 1933, they did not take effect until they were "actually delivered" to the insured on the 10th day of December, 1933, at which time "on the personal investigation" of appellant's agent the insured was "in good health." Appellant concedes that the premiums paid during the first year kept both the principal and the supplemental contracts in full force to December 10, 1934. This was the controlling proposition announced by the court in the Alcorn case, supra, where the policy in issue in its contractual provisions was identical with the policies in issue in the case at bar.

■■ It is our conclusion that, beginning with December 10, 1934, the due date of the monthly premiums was the 10th day of each succeeding month and not the 25th day of the month named in the policies as the maturity date of the annual premiums. On this conclusion the premiums paid on the 25th day of March, 1940, were in payment of the monthly premiums due on April 10th, and the payment of these

monthly premiums in advance carried. the principal and supplemental contracts to May 10th, from which date both the principal and supplemental contracts were entitled to the one month grace period. Therefore, by virtue of the one month grace period, the supplemental contracts were in full force and effect on the 4th day of June, the date of the death of the insured. We rest this conclusion on the following grounds:

Article 4732, R.C.S.1925, provides:

"1. That all premiums shall be payable in advance * * *.

"2. For a grace of at least one month for the payment of every premium after the first, * * * during which month the insurance shall continue in force, which may stipulate that if the insured shall die during the period of grace, the overdue premium will be deducted in any settlement under. the policy."

Since the premiums paid during the first year kept the policies in force to December 10, 1934, and since under this statute the premiums were "payable in advance," it logically follows that the premiums paid on December 10, 1934, carried the insurance to January 10, 1935, and that the premiums paid on the 25th day of March, 1940, were not due until April 10, 1940, and their payment in advance on March 25th carried the insurance to May 10th, from which date the insurance contracts were entitled to the one month grace period. In support of this conclusion, we quote the following proposition from a Missouri court in Landrigan v. Missouri State Life Ins. Co., 211 Mo.App. 89, 245 S.W. 382, 384, 387, which was cited with approval by the Dallas Court of Civil Appeals in Jefferson Standard Life Ins. Co. v. Baker, 260 S.W. 223, 225: "The days of grace cannot begin at a time when the policy is alive and in force under the paid premium, but begins only when the policy has run its limit under the paid premium, and runs as days of grace above and beyond the time during which the policy was in force under the premium. The insured had insurance as a matter of right under the premium until September 17, 1918, and during the period that he had insurance as a matter of right he could not be given insurance as a matter of grace, for grace is used in contradiction to right. Thirty-one days of grace was a time of indulgence granted, and it was not an indulgence until after the expiration of the insurance as a mat-

ter of right." So, on this proposition, each monthly payment carried the insurance to the 10th day of the next succeeding month.

But appellant asserts that the parties by contract made the maturity date of the premiums the 25th day of the month, the date of the policies, and not the date on which the policies were delivered. We overrule this contention on three grounds:

(1) Article 5053, R.C.S.1925, Vernon's Ann.Civ.St. art. 5053, provides: "No insurance company of any kind doing business in this State shall make or permit any distinction or discrimination in favor of individuals between the insured of the same class and of equal expectation of life in the amount of, or payment of, premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits thereon; nor shall any such company or agent thereof make any contract of insurance or agreement as to such contract other than as expressed in the policy issued thereon." To effectuate this article of our statute, it must be said that no premium can become due until the end of the period paid for by the last premium, and that a contract by the parties in contravention of this statute is void. Suppose that the agent had not been able to deliver the policies to the insured until the 20th day of December, or the 10th day of January, 1934, or the 10th day of February, 1934, or as in the Alcorn case, supra, where there was a delay of more than three months in the delivery of the policies. On appellant's concession the annual premiums paid on the date of delivery carried the policies twelve months from the date of delivery, but on its third proposition the premium for the second year would have been due on the 25th day of November, 1934, notwithstanding appellant had in its hands a fund sufficient to carry the insurance to December 10, 1934. Such a construction manifestly would constitute a "discrimination" against the insured. It is no answer to this conclusion to say that for the period of time from the 25th day of November to the 10th of December the insured had certain paid up insurance and loan values; true, he had these advantages by virtue of the maturity named in the policies, but the price paid by him for these advantages was greatly in excess of the amount that others "of the same class and of equal expectation of life" were required to pay. On the undisputed facts, the insured paid premiums sufficient in amount

to carry his insurance six years and five months, and appellant, on its third proposition, would give him insurance coverage for only six years and four and one-half months, though holding in its hands a fund sufficient to carry the insurance for the full period of six years and five months. If the insured in this case was not to be discriminated against in favor of others in his class, if his premium payment for one-half a month was not to be confiscated, then what became of this unused premium payment? Appellant did not tender it back as an over payment under its contract with the insured. Our Supreme Court enforces strictly this statute inhibiting discriminations. American Nat. Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397.

█ (2) Appellant cannot claim the 25th day of the month as the maturity date of the premiums on the theory of contract, because there is an inconsistency between the date of the policy named as the maturity date, and the date of the delivery as the maturity date. On well recognized principles of construction, to prevent a forfeiture, this inconsistency must be resolved in favor of the insured. On this point, in McMaster v. New York Life Ins. Co., 183 U.S. 25, 22 S.Ct. 10, 16, 46 L.Ed. 64, the Supreme Court of the United States said:

"But what is the proper construction of these contracts in respect of the asserted forfeiture? The company, although retaining the premiums paid, and not offering to return them, contends that, if McMaster was not bound by an agreement that the subsequent premiums should be paid on December 12, then that the minds of the parties had not met because it had not contracted except on the basis of payments so to be made; but the question still remains whether the right of recovery in this case is dependent on such payment on the 12th day of December, 1894, or within thirty days thereafter.

"We are dealing purely with the question of forfeiture, and the rule is that if policies of insurance contain inconsistent provisions, or are so framed as to fairly open to construction, that view should be adopted, if possible, which will sustain rather than forfeit the contract. Thompson v. Phenix Insurance Company, 136 U. S. 287, 10 S.Ct. 1019, 34 L.Ed. 408; First National Bank v. Hartford F. Insurance Company, 95 U.S. 673, 24 L.Ed. 563.

"Each of these policies recited that it was made in consideration of the written application therefor, which was made part thereof, and of the payment in advance of an annual premium of $21, 'and of the payment of a like sum on the 12th day of December in every year thereafter during the continuance of this policy.'

* * *

"The truth is the policies were not in force until December 18, and as the premiums were to be paid annually, and were so paid in advance on delivery, the second payments were not demandable on December 12, 1894, as a condition of the continuance of the policies from the 12th to the 18th. And as the policies could not be forfeited for nonpayment during that time the month of grace could not be shorted by deducting the six days which belonged to McMaster of right.

"In our opinion the payment of the first year's premiums made the policies nonforfeitable for the period of thirteen months, and inasmuch as the death of McMaster took place within that period, the alleged forfeiture furnished no defense to the action."

█ (3) We overrule appellant's contention, as against this inconsistency, that the parties by custom and by mutual construction of the policy contracts adopted and made the 25th day of the month the maturity date of the policies. The facts on this issue were that appellant mailed monthly notices to the insured, advising him that his premiums would become due on the 25th day of the month, but notwithstanding this notice the issue was raised against appellant that it received premium remittances from the insured subsequent to the expiration of the one month grace period running from the 25th day of the preceding month. These facts made an issue against appellant's contention that the parties by mutual construction had adopted the 25th day of the month as the maturity date of the monthly premiums. The burden rested upon appellant to establish by a jury finding this mutual construction of the parties. Since the issue was not sent to the jury and since appellant did not request that it be sent to the jury, it was waived and passed out of the case. The Pepper case, Wichita Falls & O. R. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

█ By giving a literal construction to the agreement of the parties, as written in the face of the policies, that the "annual premiums" were due on the 25th day of

the month, there was no contract as to the maturity date of the "monthly premiums." The failure to contract as to the maturity date of the "monthly premiums" created an ambiguity as to the maturity date of the monthly premiums, which must be resolved in favor of the insured to prevent a forfeiture of the policies; this principle has great force in this case since appellant had in its hands sufficient funds belonging to the insured to prevent the forfeiture, if by the language of the contracts equity can direct that this fund be applied to the payment of the premiums from the 25th day of March, 1940, to April 10, 1940. In support of this principle of construction of an insurance policy, in Manufacturers' Accident Indemnity Co. v. Dorgan, 6 Cir., 58 F. 945, 956, 22 L.R.A. 620, the court said: "Policies are drawn by the legal advisers of the company, who study with care the decisions of courts, and, with those in mind, attempt to limit as narrowly as possible the scope of the insurance. It is only a fair rule, therefore, which courts have adopted, to resolve any doubt or ambiguity in favor of the insured and against the insurer." As sustaining this theory of ambiguity, we cite Haynes v. Midland Life Ins. Co., 60 S.D. 212, 244 N.W. 110, by the Supreme Court of South Dakota. In that case the policies were dated February 24, 1928, but were not delivered until the 29th of March, 1928, and were to be effective only from the date of delivery. On the point at issue, the court said: "The premium stated in the body of two of the policies was the annual premium of $115.30; in the other annual premium of $144.13. On the back of each policy the respective amounts of monthly, annual, semi-annual, and quarterly premiums were stated. In the applications which, by photostatic copy, were made part of the policies, the words 'monthly with loan' were written with pen and ink in the blank following the printed words 'annual premium.' * * * Here the parties did not clearly express their intention in the policies. The policies are silent as to when any monthly payment of premium is to be made. The policies provide for an annual payment 'on or before the 24th day of February in every year.' * * * But here there was no day fixed for the payment of a monthly premium, and more than a monthly premium period had elapsed before the policy was put into effect by acceptance of it, in its amended form. Ap-

plying the foregoing principles to the facts in this case, the court is of the opinion that the court below committed no error in ruling that the policy was still in force at the date of the death of the deceased." The following authorities are interestingly in point: Halsey v. American Cent. Life Ins. Co., 258 Mo. 659, 167 S.W. 951; Newman v. John Hancock Ins. Co., Mo.App., 7 S. W.2d 1015; Eyring v. Kansas City Life Ins. Co., 234 Mo.App. 328, 129 S.W.2d 1086; Bigalke v. Mutual Life Ins. Co., Mo. App., 34 S.W.2d 1019; Shinall v. Prudential Ins. Co., 91 Colo. 194, 14 P.2d 183.

In support of its third proposition, that the parties by contract made the maturity date of the monthly premiums the 25th day of the month, appellant cites the following authorities: Rolerson v. Standard Life Ins. Co., Tex.Civ.App., 244 S.W. 845; Meadows v. Continental Assurance Co., 5 Cir., 89 F.2d 256; Rushing v. Manhattan Life Ins. Co., 8 Cir., 224 F. 74; New York Life Ins. Co. v. Tolbert, 10 Cir., 55 F.2d 10. The Rolerson case is the only Texas case cited. On the theory that the parties did not contract to pay the *monthly* premiums on the 25th day of the month, that case is not in point; the policy in that case stipulated only for the maturity date of the *annual* premiums—the issue at bar is the maturity date of the monthly premiums. And it should be said that the Rolerson case was a county court case and not within the jurisdiction of the Supreme Court, and that the principle of law upon which the policy contract was construed was overruled, in principle, in the Alcorn case, supra. In support of its holdings in the Rolerson case, the court cited Mutual Life Ins. Co. v. Stegall, 1 Ga.App. 611, 58 S.E. 79. Distinguishing the Stegall case in Prudential Ins. Co. v. Stewart, 9 Cir., 237 F. 70, 72, 6 A.L.R. 766, the court said: "The court held that the policy became void for the failure of the insured to pay the second annual premium on August 30, 1905. That conclusion seems to have been influenced by the statute of the state which provided that a policy of life insurance 'runs from midday of the date of the policy and the time must be estimated accordingly, if the policy is limited to a specified number of years.'" We quote the following note from 80 A.L.R. 966, restating the position of the Georgia case on this issue: "Although not on facts within the scope of the annotation, as accident, rather than

life, insurance was involved, attention is called to Parham v. National Relief Assurance Company, 1924, 33 Ga.App. 59, 125 S.E. 519, in which the doctrine that premium periods are to be computed from the date of the delivery of the policy and the payment of the first premium, when the taking effect of the policy is conditioned on these contingencies, though the policy, in express terms, stipulates for the payment of the premiums on a specific date, was applied to an accident policy, which was dated March 28, 1921, and recited that the insured was insured at 12 o'clock noon on that day until 12 o'clock noon of May 1, 1921, and for such further period stated in the renewal receipt as the renewal premium per month paid by the insured would maintain the policy in force, it being expressly stated in the application that the insurance was not to take effect until the delivery of the policy to the insured. The court stated, that since there was conflict between the provisions of the policy as to when the insurance became of force, provisions most favorable to the insured must control, that the insurance did not take effect until April 24, 1921, the date of delivery, and that each premium paid by the insured purchased one month's insurance, so that the premium paid on August 2, 1921, continued the policy in force until September 4, 1921, and the insurance had not lapsed on the 3rd day of that month, when the insured was accidentally injured." In the Rolerson case, the court also cited the Methvin case, Methvin v. Fidelity Mut. Life Ass'n, 129 Cal. 251, 61 P. 1112, which case was decided on the construction of the controlling statute. But the Methvin case cited the McMaster case, McMaster v. New York Life Ins. Co., 8 Cir., 99 F. 856, which holding was reversed by the Supreme Court of the United States, McMaster v. New York Life Ins. Co., supra. Appellant's Meadows case is not in point. The policy in issue in that case [89 F.2d 258], expressly provided that it should "take effect as of the 9th day of July, 1926," the date of the policy. Appellant's Rushing case is not in point; the policy in issue in that case provided "this policy is to date from June 1, 1903," and this language was given effect. On the same distinction appellant's Tolbert case [55 F.2d 11] is not in point; the policy in issue in that case provided "This Policy takes effect as of the Twenty-third day of August, Nineteen Hundred and Twenty-eight, which day is the anniversary of the Policy."

The Supreme Court refused a writ of error in Great Southern Life Ins. Co. v. Alcorn, supra. Writing the opinion in that case, the court announced the following propositions [80 S.W.2d 430]:

(a) "It seems to us that much of the confusion in these matters arises because the courts are inclined to overlook the fact that, despite the numerous evidences of legislative supervision of the life insurance business, the case is still one in contract." Of course, under this proposition parties cannot contract as to matters inhibited by law, and, therefore, this proposition is not in point on our construction of the statute inhibiting discrimination.

(b) "This brings us to the provision of the contract that the next annual insurance premium must be paid on August 7, 1932, and, if same 'shall not be paid when due, this policy shall thereupon cease, except as herein provided.' The parties could contract for the payment of the second year's premium, to be paid before the expiration of the first year's insurance, could contract for it to be at any date not prohibited by law, and the only provision in the statutes relating thereto is that the premiums must be paid in advance." This proposition is dicta. Only one annual premium was paid in the Alcorn case, which carried the insurance to a date beyond the death of the insured, and the court was not called upon to construe the effect of a contract regulating the payment of the subsequent premiums. But if every proposition in the Alcorn case be accepted as the law, we still have before us the proposition of ambiguity on the failure of the parties to contract as to the maturity date of the monthly premiums.

The judgment of the lower court also has support in the jury's findings on the issues of waiver and estoppel, based on the receipt by appellant of monthly premiums subsequent to the expiration of the one month grace period, running from the 25th day of the month. Since the judgment of the lower court must be affirmed on our construction of the policy contracts, we pretermit a discussion of appellant's assignments against the issues of waiver and estoppel.

Affirmed.

### On Rehearing

On appellant's insistence that we have not correctly understood its position, we withdraw the statement that appellant conceded "that the premiums paid during the

first year kept both the principal and the supplemental contracts in full force to December 10, 1934."

In all other respects the motion is overruled.