HAYNES, Respondent, v. MIDLAND NATIONAL LIFE INSURANCE CO., Appellant.

(244 N. W. 110.)

(File No. 7097. Opinion filed September 14, 1932.)

*Hanten, Hanten & Henrikson,* of Watertown, for Appellant.
*Mitchell, Zollman & Navin,* of Mitchell, for Respondent.

MISER, C.  On January 24, 1928, Almond L. Haynes, aged 45, and Gracia F. Haynes, his wife, aged 39, signed separate applications for life insurance in the Midland National Life Insurance Company.  Each application for joint ordinary life insurance provided:  " * * * 3.  That there shall be no contract of insurance until this application has been received and approved at the home office, the policy issued and delivered, and the full first premium as stipulated in the policy has been paid during my good health; provided, however, that if the said full first premium has been paid to the company's agent at the time this application is made, and if the application is approved as made, without changes or amendments, the contract of insurance shall be in force, subject to the provisions of the policy applied for, on the date of approval at the home office.  4. In case of errors or omissions in this application, or in case the company is unwilling to issue a policy on the plan or in the amount applied for, the company is hereby authorized to amend this application, in the space entitled, 'Corrections and Amendments,' and my acceptance of a policy based on the amended application, accompanied by a copy thereof, shall be a ratification of such changes and amendments."

On February 24, 1928, in the space entitled "Corrections and Amendments" on the application of Almond L. Haynes, the medical director of the company wrote "Table C.," indicating 75 per cent increase in mortality.  In the like space on the application of Gracia F. Haynes, he wrote "Table A," indicating an impairment amounting to 25 per cent of the mortality rating.  In the space entitled "Corrections and Amendments" on the application of Almond L. Haynes, appellant's president and actuary wrote: "Accepted, rated ages 49—49, annual premium $374.73 without extended insurance."  He testified that the annual premium on a joint ordinary life policy of $6,500 payable to survivor, husband 45 and wife 39, was $293.15, whereas the annual premium on such a policy at the accepted ages of 49 and 49 was $374.73, an in-

crease in the annual premium of $81.58. No notice was given to the Hayneses at that time of the rating up of the applications or of the fact that they were accepted without extended insurance. On March 29, 1928, the agent of appellant company delivered the policies to the insured, this being their first notice of their rating up and of the increased premium. The three joint policies so delivered on March 29, 1928, and purporting to be signed on February 24, 1928, recited: "This policy is based upon the payment of premiums annually in advance, but if premiums be made payable in quarterly or semi-annual installments, any future installments of the premiums for the current policy year, remaining unpaid at the maturity of the policy shall be considered an indebtedness to the company on account of this policy. * * * If any premium be not paid when due, this policy shall be void and all premiums forfeited to the company * * *."

The premium stated in the body of two of the policies was the annual premium of $115.30; in the other the annual premium of $144.13. On the back of each policy the respective amounts of monthly, annual, semi-annual, and quarterly premiums were stated. In the applications which, by photostatic copy, were made part of the policies, the words "monthly with loan" were written with pen and ink in the blank following the printed words "annual premium."

At the time of the delivery of the policies on March 29, the agent of appellant obtained from the insured their signature on a promissory note in the principal sum of $6,500 and to real estate mortgages, assignments of the policy and of the rents of the real estate so mortgaged, as security for the payment of the $6,500 loaned by appellant company to the insured. The promissory note provided for the payment of the sum of $6,500 in 120 monthly installments "on the first day of each successive calendar month, beginning on the first day of July, 1928, each for the sum of One Hundred Seven and Eighteen One-Hundredths Dollars ($107.18) and each of said installments except the first which does not include interest, including: (A) A payment on account of principal * * *. (B) Interest * * *. (C) The regular monthly premium of

"Ten and 38—100 Dollars * * * on policy * * * numbered 36997

"Ten and 38—100 Dollars * * * on policy * * * numbered 36998

"Twelve and 97—100 Dollars * * * on policy * * * numbered 36999 issued by said Company * * * and assigned to said Company as collateral security for the payment of said loan."

In a letter from the company to the insured dated June 11, 1928, inclosing check for the balance of the $6,500 so loaned, appellant company explained its retention of $134.92 thus: "Prem. Policies of $6,500.00, March, April, May, June $33.73 Ea...... $134.92." Thereafter on July 7, 1928, and again on August 6, 1928, the insured made payments of $107.18 each, thereby paying two monthly premiums. No payment was made in September, 1928. On October 7, 1928, Almond L. Haynes died.

Appellant company refused to make payment to the beneficiary under the policies, claiming that the policy was not in effect at the time of his death, the seventh month, the month of grace (section 9340, subd. 2, R. C. 1919) having ended September 24, 1928. From a judgment decreeing, inter alia, that the policies were valid and effective on October 7, 1928, the company appeals.

Respondent, Gracia F. Haynes, contends that by the recital of an annual premium and by the acknowledgment of receipt thereof in the policy, appellant is estopped under section 1421, R. C. 1919, to claim that the full first year's premium was not paid. She also claims that, by the execution of the note and mortgage, assignment of policy, and assignment of rents, the premiums were in fact paid.

The decision of respondent's first contention is made difficult by the wording of the acknowledgment—if there was an acknowledgment of receipt within the meaning of section 1421. The decision of her second contention is made difficult by the conflict between the language of the policy and the language of the application which was part of the policy, and by the wording of the note which contains a promise to pay $6,500 in specified installments but which specified installments include the policy premiums in addition to the principal and interest on the $6,500 loaned. These are not decided because respondent is otherwise entitled to prevail.

Her third contention is that the effective date of the policy was March 29th and that the policy was in force for seven months

from that effective date and was therefore in force at the death of Almond Hayes on October 7th.

The finding of the trial court that the policy was delivered to the insured on March 29th and accepted by them on that date is supported by the preponderance of the evidence. No premium was paid prior to March 29th, and only by assuming that the delivery of respondent's note paid the premium may a premium be said to have been paid on March 29th. Not until June 11th were the premiums for the first four months' insurance withheld by appellant company. If there was to be "no contract of insurance" until "policy issued and delivered and full first premium * * * paid," as expressly provided in the third "condition" in the policy heretofore quoted, there was no contract prior to March 29th unless appellant waived that condition.

Prior to March 29 there was no "acceptance" by the insured which, under the fourth "condition" heretofore quoted, was necessary to ratify the changes in the application which imposed upon insured an additional annual premium burden of $81.58. Until informed to the contrary they had a right to assume that the policies issued were based on the application as made. Until March 29th insured did not know of the increase in premium nor that the policies provided for no extended insurance. They were not bound by facts of which they had no knowledge. Lyke v. First National Life Ins. Co., 41 S. D. 527, 171 N. W. 603, 604.

In Lyke v. First National Life Ins. Co., supra, respondent therein, the insurance company, made the following concession: "It is probably the rule of law that the insured, by reason of having paid the first annual premium, would be entitled to a full year's insurance from the time the insurance went into effect, and that a second or further premium would not be due until such entire year had expired. This is the doctrine announced in McMaster v. New York Life Ins. Co., 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64; Halsey v. American Central Life Ins. Co., 258 Mo. 659, 167 S. W. 951; Stinchcombe v. New York Life Ins. Co., 46 Or. 316, 80 P. 213." Accepting that as the correct rule of law, this court held that, notwithstanding a policy provision that premiums should be payable annually in advance on the 12th day of September of each year, the premium period payments should be

computed from the date when the policy went into effect, which was the day the policy was dated and issued, September 21st, although the application was approved September 19th.

However applicable to the facts of the Lyke Case the rule of law conceded and accepted therein, some courts deny its correctness. A careful review of the cases discussing the subject is found in Landrigan v. Missouri State Life Ins. Co., 211 Mo. App. 89, 245 S. W. 382, which is itself reviewed in 32 A. L. R. 1256. The McMaster Case and the Halsey Case, referred to in the Lyke Case, were mentioned in Wolford v. National Life Ins. Co., 114 Kan. 411, 219 P. 263, 264, 32 A. L. R. 1248, 1251. Referring to the policy contract in the case before it, the Kansas court said: "There is no ambiguity in the contract in respect to the time of payment, which opens the way for interpretation by the court, and permits it to say that one of several dates mentioned was the time for which insurance was to run, and measure the date of expiration. Decisions upon contracts of that character are cited wherein the provisions were liberally interpreted in favor of the insured, and among them are Halsey v. American Cent. L. Ins. Co., 258 Mo. 659, 167 S. W. 951; Stramback v. Fid. Mut. L. Ins. Co., 94 Minn. 281, 102 N. W. 731; Prudential Ins. Co. v. Stewart, 6 A. L. R. 766, 150 C. C. A. 272, 237 F. 70; McMaster v. New York L. Ins. Co., 183 U. S. 25, 46 L. Ed. 64, 22 S. Ct. 10. But these are mainly cases where there were ambiguous provisions in the contract and where the times of payment were not definitely prescribed. Here the times of payment were unequivocally fixed in the contract."

The date from which life insurance premium periods are to be computed is the subject of an extensive note in 32 A. L. R. 1253, being an annotation to the Wolford Case, supra, and supplementing an annotation found in 6 A. L. R. 774. See, also, Cooley's Briefs on Insurance (2d Ed.) vol. 2, p. 1390 et seq. An examination of the cases cited by appellant and respondent herein, as well as many of those reviewed in the foregoing annotations, reveals the importance of the terms of the policy in question and of knowing whether delivery of policy is or is not essential to completion of contract and whether a specific date is or is not provided in the policy for the payment of premium. An examination of those cases also discloses that those courts which appear to hold contrary to the

rule conceded and accepted in the Lyke Case, the rule commonly referred to as the rule of the McMaster Case, base their holdings on the ground that parties are entitled to make their own contracts; that courts should not interpret into insurance contracts conditions contrary to those of the parties clearly expressed therein; that the time when a premium is due should be definite and therefore the date mentioned in the policy for the payment of premiums governs.

Here the parties did not clearly express their intention in the policies. The policies are silent as to when any monthly payment of premium is to be made. The policies provide for an *annual* payment "on or before the 24th day of February in every year." According to the note and the mortgage securing it, the premiums were to be paid on the 1st day of each month commencing with July 1st; but, though appellant asks modification of the policies to show that monthly payments were intended, appellant pleads, and its secretary-treasurer testified, that the month of grace expired September 24th. Moreover, the insured did not pay the premiums on July 1st nor on August 1st but on July 7th and August 6th. Prior to the 1st of July, when the collection of premiums was a matter of bookkeeping only, because appellant held unremitted funds of respondent, payments were not made on the 24th of February, March, April, or May nor on the 1st of March, April, May, or June, but on the 11th of June. When the language of the policies is considered in connection with exhibits introduced by appellant to show grounds for modification, the following questions suggest themselves: If the premium periods were by calendar months as indicated by the note, did appellant intend to waive payment for the period from February 24th to March 1st? If no premium was charged for that fractional period for the reason that the policy was not then in effect, why should premium be charged from March 1st to March 24th when the policy was in effect no more during that period than from February 24th to March 1st? If the first premium period was from February 24th to March 24th, was it appellant's intention to collect for that monthly period if the policy was not in effect until March 29th? If the first premium period was from March 1st until April 1st, did appellant intend to collect an entire month's premium if the risk began on March 29th, thereby paying for thirty-one days' insurance and receiving only two days of protection?

Not only were the policies silent as to when any monthly payment of premium was to be made, but also they did not state definitely and positively when the policies were to go into effect. The nearest approach thereto is in the third and fourth conditions heretofore quoted. Yet the applications were not approved as made without changes or amendments so as to bring them within the third condition and put them in force upon approval of the applications; nor is there any provision in the fourth condition that a subsequent ratification of changes in the applications, of which the insured was not advised, should put the policies in effect at an earlier date.

In the McMaster Case, supra, the Supreme Court of the United States said: "We are dealing purely with the question of forfeiture, and the rule is that if policies of insurance contain inconsistent provisions, or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain rather than forfeit the contract. Thompson v. Phenix Ins. Co., 136 U. S. 287, 34 L. Ed. 408, 10 S. Ct. 1019; First National Bank v. Hartford F. Ins. Co., 95 U. S. 673, 24 L. Ed. 563." That rule was approved in Lyke v. Insurance Co., 41 S. D. 527, 531, 171 N. W. 603, 605. See, also, 32 C. J. 1165, note 75; 14 R. C. L. p. 926, § 103; Parham v. National Relief Assur. Co., 33 Ga. App. 59, 125 S. E. 519. Also as stated in Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 91, 68 L. Ed. 235, 31 A. L. R. 102: "The rule is settled that in case of ambiguity, that construction of the policy will be adopted which is most favorable to the insured. The language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it." That rule has the approval of this court in Farmers' & Merchants' State Bank of Verdon v. U. S. Fidelity & Guaranty Co., 28 S. D. 315, 319, 133 N. W. 247, 36 L. R. A. (N. S.) 1152.

In the recent case of Bergholm v. Peoria Life Insurance Co., 284 U. S. 489, 52 S. Ct. 230, 231, 76 L. Ed. 416, the court says that this canon of construction—while both reasonable and just, since the words of the policy are chosen by the insurance company —"furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not

exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings. * * * As long ago pointed out by this court, the condition in a policy of life insurance that the policy shall cease if the stipulated premium shall not be paid on or before the day fixed is of the very essence and substance of the contract, against which even a court of equity cannot grant relief."

But here there was no day fixed for the payment of a monthly premium, and more than a monthly premium period had elapsed before the policy was put into effect by acceptance of it, in its amended form. Applying the foregoing principles to the facts in this case, the court is of the opinion that the court below committed no error in ruling that the policy was still in force at the date of the death of the deceased. It was within the power of the insurance company, if it meant the policy to be in effect from the date of its approval by the company, to have said so. Instead, in the third "condition," heretofore quoted, it provided that the contract should be in force on such date if the full first premium had been paid at the time of the application and "if the application is approved as made, without changes or amendments." Not having clearly and definitely stated that the policies issued—however different from the policies applied for in increase of premium, deprival of extended insurance, or otherwise—should be in effect from February 24th, the company must accept the consequences resulting from its own failure to state the contract definitely and clearly. There are many cases where insured has been held bound to pay for a full premium period though a considerable part of the premium period had elapsed before the insurance was in force, but here at least an entire monthly premium period had elapsed before the insurance became effective. There was no quid pro quo whatever for the first month's premium if the time was measured from the only date mentioned in the policy, February 24th.

The judgment and order appealed from must be, and they are, affirmed.

POLLEY, ROBERTS, and RUDOLPH, JJ., concur.
CAMPBELL, P. J., concurs in the result.

WARREN, J., dissents.