STATE SECURITY LIFE INSURANCE
COMPANY *v.* KINTNER.

[No. 30,325. Filed October 18, 1962.]

332

*John R. Walsh* and *John D. Staggenburg,* both of Anderson, for appellant.

*N. George Nasser,* and *Rosenfeld, Wolfe & Allen,* both of Terre Haute, for appellee.

JACKSON, J.—This case comes to us on petition to transfer from the Appellate Court under Acts 1933, ch. 151, §1, p. 800, being §4-215, Burns' 1946 Replacement. See: *State Security Life Insurance Co.* v. *Kintner* (1961), 175 N. E. 2d 36.

This action was instituted by the appellee, Ada G. (Vicars) Kintner, on an insurance policy (No. 1241) issued by the appellant, State Security Life Insurance Company, on the life of her husband, Carl William Vicars, with the appellee being named as primary beneficiary thereunder. Judgment was rendered for

appellee in the Vermillion Circuit Court. Most of the facts herein are undisputed in as much as the parties in the trial below stipulated and agreed to them.

The appellee's husband, Carl William Vicars, died at 12:22 o'clock a.m., Central Standard Time, on March 31, 1955. The cause of his death resulted from accidental means, i.e., from injuries sustained in a motor vehicle collision which occurred on March 30, 1955. If the insurance policy issued by appellant was in effect at the time, the death occurred under circumstances invoking the "double indemnity" or Accidental Death Benefit provisions of the policy.

The appellee's husband had submitted on November 27, 1954, an application for life insurance to the appellant life insurance company through an agency of the company. The sum of $6.03 was paid by appellee's husband to the appellant's agent at the time the application was submitted. However, this amount was not sufficient to pay in full the initial premium on the policy of insurance applied for.

The life insurance policy was not delivered to Carl William Vicars until some time after December 10, 1954. The exact date of delivery is uncertain although the insurance agent testified that it was either on the 10th or within the next two days. Upon delivery, the insured paid an additional twenty-one cents to the insurance agent as part of the premium.

A statement of the insurance agency dated December 10, 1954, was admitted into evidence by stipulation of the parties, and it indicated that a monthly premium of $7.35 would be charged on the policy written on the life of appellee's husband, Carl William Vicars, beginning November 27, 1954.

Subsequent premium payments were made by the insured to the insurance agency acting for the ap-

pellant, as follows: February 5, 1955, $9.51, and February 18, 1955, $9.51. It appears that a portion of these payments ($2.16) were applied to a separate policy of insurance on the life of the appellee.

Payments made by the insured were remitted by the insurance agency to the appellant company, as follows: November 27, 1954, $9.30; December 13, 1954, 21 cents; February 5, 1955, $9.51; and February 21, 1955, $9.51.

The appellant refused to provide proof of loss papers to appellee on the death of her husband, contending that the insurance had lapsed prior to the time of the death of the husband due to a failure to make timely payment of the premiums.

The trial court found for the appellee in ruling upon motions for a directed verdict submitted by both appellant and appellee at the conclusion of all the evidence. Judgment was rendered accordingly upon the verdict returned by the jury under the mandatory instruction of the court.

Since both parties moved for a directed verdict at the conclusion of all the evidence, the cause was submitted to the court for determination, and it was proper for the court to render its decision on the issues presented. *Combs and Broderick d/b/a* v. *Keller et al.* (1957), 127 Ind. App. 531, 536, 142 N. E. 2d 474. It must be presumed that the appellant waived its right to a trial by jury in failing to further request that the cause be submitted to a jury after the denial of its motion for a directed verdict. *Michigan Cent. R. R. Co.* v. *Spindler, Admr.* (1937), 211 Ind. 94, 5 N. E. 2d 632.

The question presented here is: On what date were the premiums due and payable on the policy of insuance (No. 1241) issued by appellant on the life

of Carl William Vicars? The answer to this question will determine whether or not the policy was in force at the time of the death of the insured.

The application for life insurance, together with the policy, constitute the contract between the insurance company and the insured. Acts 1935, ch. 162, §151A as added by Acts 1943, ch. 189, §2, p. 562; 1959, ch. 146, §1, p. 355, being §39-4206a (3), Burns' 1961 Cum. Supp.

The insurance policy states on its face that the date of issue is November 27, 1954. Contained in the application for insurance is the statement that the policy is to be dated November 27, 1954. However, the application also provides a condition precedent as to the policy taking effect, as follows:

"... that the insurance hereby applied for shall not take effect unless and until the full first premium ... shall have been paid and the policy delivered to the applicant during the lifetime and sound health of the applicant...."

Under the "General Provisions" of the policy, the date of issue is referred to in the section providing for the payment of premiums:

"The annual premium shown on the first page hereof is payable on the date of issue and annually thereafter during the lifetime of the Insured, until premiums have been paid for the premium paying period. . . . In lieu of annual payments, premiums may be payable semi-annually or quarterly at the Company's published rates therefor in effect at the date of issue of this policy, with the premium due dates determined by the interval of payment selected. . . ."

It is appellee's position that the section providing for the payment of premiums makes no mention of monthly payments. The section only makes provision

for annual premiums, or in lieu thereof, premiums may be payable semi-annually or quarterly. Therefore, appellee argues that the date of issue to which the specified premiums are related under the terms of the policy cannot be applicable in the situation where monthly payments are made. The proper anniversary date, according to appellee, in such a situation where the time of payment is not expressly specified in the policy, is the date on which the policy became effective. In the case at bar, this would have been the date of delivery on December 10, 1954, or within the next two days.

If appellee's position is accepted, then the three monthly payments made in advance by Carl William Vicars on the insurance policy would have carried the paid up period to around the tenth of March, 1955, (or within the next two days), and coupled with the grace period,[1] the policy would have been in full force and effect at the time of Mr. Vicars' death on March 31, 1955.

Appellant, on the other hand, cites a provision on the face of the policy which provides as follows:

"This insurance is granted in consideration of the application and payment of premiums as herein provided. Policy years, policy months and policy anniversaries shall be computed from the date of issue unless otherwise provided by endorsement hereon."

The appellant contends that the above quotation, together with dates shown on the application for insurance and on the policy itself, indicates that the

---

1. The policy in the case at bar provides: "Any premium not paid on or before the date it falls due is in default but a grace period of one month (not less than thirty days) without interest will be allowed for the payment of every premium after the first, during which period this policy shall continue in force. . . ."

effective date of said policy was November 27, 1954. That the monthly premiums were to be due and payable as computed from said date. There was no endorsement on the policy providing otherwise.

The insured made only three monthly payments. If we adopt appellant's position, the first payment was due on November 27, 1954, the second was due on December 27, 1954, and the third was due on January 27, 1955. Appellant argues that the next premium (if it had been paid) would have been due on February 27, 1955. Since it was not paid, the policy then went into a grace period which expired on March 27, 1955. Thus, according to appellant, the policy had already lapsed prior to the death of Carl William Vicars on March 31, 1955.

Viewing both the application for insurance and the policy itself in the case at bar, we cannot find anything which *expressly* refers to the payment date for monthly premiums. The section of the policy here which deals particularly with the payment of premiums makes no mention of a monthly premium.[2] We are aware of the rule that where the policy provides an express date for the payment of premiums such date controls over the later date of delivery at which time the policy actually may become effective. *Tibbits* v. *Mutual, etc., Ins. Co.* (1903), 159 Ind. 671, 65 N. E. 1033. That where the date of payment of premiums is specifically fixed in the policy there is nothing further to

---

2. The statement of the insurance agency dated December 10, 1954, referred to previously in the recitation of facts, cannot be said to alter the terms of the contract between the parties here. Such statement provided that the monthly premiums started November 27, 1954, and were payable on such anniversary date thereafter. The policy by its terms prohibits the modification of the contract except according to the procedure as specified therein.

construe. *Painter* v. *Massachusetts, etc., Ins. Co.* (1921), 77 Ind. App. 34, 133 N. E. 20. However, in the instant case, to arrive at the result sought by appellant, we must resolve an ambiguity which exists by the lack of any definite provision regarding monthly premiums in the section of the policy which spells out how (either annually, semi-annually or quarterly) the premiums are to be paid. In order to do so, we must construe the contract.

In construing the insurance contract in the case at bar, we take cognizance of the following:

> "It is elementary in the construction of insurance policies that where insurance contracts are so drawn as to be ambiguous or require interpretation or are fairly susceptible of two different constructions so that reasonably intelligent men on reading them would honestly differ as to their meaning, the courts will adopt that construction most favorable to the insured." *Masonic Acc. Ins. Co.* v. *Jackson* (1929), 200 Ind. 472, 481, 164 N. E. 628.

Construing the policy as a whole, we cannot agree with the appellant that the provision in the policy that policy years, policy months and policy anniversaries shall be computed from the date of issue manifests a clear and unambiguous intention that monthly premiums shall be payable on anniversaries of said date. This is especially true, in our opinion, since the draftsman in the specific section in the policy providing for the payment of premiums made no mention of monthly premiums, let alone their due date.

Further, on appeal, we must consider the evidence most favorable to the appellee in supporting the judgment of the court below, since the evidence in the instant case does not point to only one conclusion which is adverse to the decision of

the trial court. *Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155, 14 N. E. 2d 905.

In as much as the policy here did not expressly state when *monthly* premiums were due and payable, we hold that it was the effective date of the ▆ ˗˗ policy which became determinative of the date the monthly premiums were due. *Haynes* v. *Midland Nat. Life Ins. Co.* (1932), 60 S. D. 212, 244 N. W. 110.

Therefore, the judgment of the Vermillion Circuit Court is affirmed.

Arterburn, C. J., concurs with opinion.

Landis, J., concurs.

Achor, J., concurs in result.

Bobbitt, J., dissents with opinion.

### CONCURRING OPINION.

ARTERBURN, C. J.—An insurance contract is a detailed and complex instrument, drafted by expert legal counsel, standardized and presented in mass-produced form and delivered to the applicant for acceptance, normally without benefit of legal counsel on his part. It has been called a "contract of adhesion" for the reason that the insured is expected to "adhere" to it as it is, with little or no choice as to its terms. The Delivery of A Life-Insurance Policy, 33 Harvard Law Review, 198.

Coupled with this situation is the recognized fact that rarely, if ever, does an insured read his insurance contract, although the law has said, with reference to contracts generally, that a party is bound by what the instrument says, though ignorant of its terms. In fact, realistically, even if the insured had the inclination to attempt to read the policy, I doubt

that he would gain much more knowledge than he previously had because of the technical language he would encounter. I doubt that most lawyers or even judges (who say one is presumed to have read his insurance policy) ever read them.

There is some analogy between the sale of goods and the sale of an insurance policy as a package. In the sale of goods there is an implied warranty that the article or package is fit for the purposes for which sold. An automobile is sold with the implied warranty that it will run, and it is no defense, if it does not run, to say that the buyer should have looked under the hood before buying and he then would have found there was no engine.

Although the law has not found a proper rationale for handling the problems arising from a failure to read all the detailed terms of an insurance contract, legal realism has attempted to ameliorate somewhat the harshness of the situation by construing such adhesion contracts against the party selling or delivering the same.

The question before us here is, should the payment of the premium on the policy be calculated from the date of the application (November 27, 1954) or from the date of delivery (December 10, 1954) of the policy? If the former date is used, the policy would have lapsed from non-payment at the time of the death of the insured. This question requires a construction of the wording of the insurance contract.

The application for the insurance in this case stated that the insurance policy would not take effect until the first premium is paid "and the policy delivered." The evidence shows that it was not delivered until December 10, 1954. However, the issued policy listed the "date of issue" as November 27, 1954, the policy be-

ing predated as of the date of the application. The appellant admits, and it is the general rule, that if the insured had died between the date of the application (November 27, 1954) and the date of delivery of the policy (December 10, 1954), i.e., the "effective date", there would have been no insurance coverage and, therefore, no liability on the part of the insurance company. 1 Couch, On Insurance 2d §11:2; *Ebner, Admr.* v. *Ohio, etc., Ins. Co.* (1918), 69 Ind. App. 32, 121 N. E. 315; *Western & So. Life Ins. Co.* v. *Persinger, Admr.* (1936), 101 Ind. App. 522, 199 N. E. 880.

A construction of the language of the policy which would compel the insured to pay for insurance during a period when he was not actually covered by insurance would be inequitable and contrary to reason. To me, regardless of what the policy may state, the "date of issue" is really the date of delivery. *Lentin* v. *Continental Assurance Co.* (1952), 412 Ill. 158, 105 N. E. 2d 735.

In *Hampe* v. *Metropolitan Life Ins. Co.* (1929), —Mo. App.—, 21 S. W. 2d 926, the court said:

"This ruling is founded upon the theory that where there is no liability, there can be no insurance; that the payment by the insured of a stipulated premium for a certain term entitles him to protection for the full term, and not for a less one; and that an insurance company should not be permitted, where the policy is legitimately susceptible of any other construction, to accept a premium for a definite term, and then escape liability by interposing the technical defense that the insured had agreed to pay the premium long before it was due."

It is further pointed out that the applicant, when signing an insurance application, is normally asked by the insurance agent whether he desires to pay

the premium then and have the insurance take effect immediately or whether he desires to wait until the policy is delivered. The position taken by the appellant results in there being no difference in the cost of the insurance, whether it is paid at the time the application is made or at the time the policy is delivered. Yet the applicant would not be insured in the intervening time between the making of the application and the delivery of the policy.

For the reasons stated, I feel the equitable and fair construction of the policy would be such that the insured should not have to pay for insurance during a period of time for which he receives no coverage and during which the insurance company bears no risk. See Vance, The Law Of Insurance, pp. 287-288 (2d Ed. 1930).

I therefore concur in affirming the judgment of the trial court.

## DISSENTING OPINION.

BOBBITT, J.—I would deny transfer in this case, and am unable to agree with the view of the majority of the court as expressed in the majority opinion for the reasons stated in the opinion of the Appellate Court in *State Security Life Insurance Co.* v. *Kintner* (1961), 175 N. E. 2d 36.

NOTE.—Reported in 185 N. E. 2d 527.