D & P TERMINAL, INC., a Corporation, Appellant,

v.

WESTERN LIFE INSURANCE COMPANY, a Corporation, Appellee.

No. 18394.

United States Court of Appeals Eighth Circuit.

Nov. 21, 1966.

Alan L. Austin and J. Douglas Austin, Watertown, S. D., for appellant, and filed printed brief.

Robert C. Heege, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for appellee, and filed printed brief.

Before VAN OOSTERHOUT and GIBSON, Circuit Judges, and NICHOL, District Judge.

GIBSON, Circuit Judge.

This is a diversity case to recover proceeds of an insurance policy issued by defendant-appellee on the life of Louie H. DeWall, who was a stockholder and officer of the plaintiff-appellant corporation. The United States District Court for the District of South Dakota held that the policy had lapsed for non-payment of premium, that an attempted reinstatement was void and entered judgment accordingly for defendant. Plaintiff accepts the voiding of the reinstatement and appeals only from the ruling that the policy had lapsed. We affirm.

Plaintiff, D & P Terminal, Inc., is a South Dakota Corporation engaged in the operation of a grain terminal warehouse.

On August 3, 1959, DeWall, on behalf of plaintiff, made an application to defendant, Western Life Insurance Company, for a business insurance policy on his life. The application was for $40,000 coverage with plaintiff corporation to be the beneficiary. Following a routine medical examination, the application and medical report were forwarded to defendant's main office, then at Helena, Montana. Defendant acknowledged receipt of the application, but due to the amount of insurance requested, informed its field

agent on August 11 and 12, 1959 that a second medical examination, including an electrocardiogram, should be given De-Wall, that the application should be signed by some officer other than the proposed insured, and that it was necessary to receive a statement that the corporation had authorized the purchase of insurance on the life of the officer. Then on September 18, 1959, defendant indicated to its field agent that the application was held up pending receipt of a statement from the board of directors of plaintiff authorizing the purchase of this insurance.

On October 13, 1959, defendant's main office wrote to its field agent indicating that all the evidence of insurability had been received, that DeWall was a substandard risk and could only be issued a regular 5 Year Term policy which converts to Ordinary Life, rather than the requested 5 Year Renewable and Convertible Policy. The letter again indicated the need for a corporate authorization of the insurance purchase as required by the law of South Dakota.[1]

A letter of October 29, 1959, reiterated this need for a statement from the corporation. On November 13, 1959, a letter from defendant to its field agent indicated that if the statement were not received by November 27, the file would be closed and the application canceled. On December 17, 1959, still another letter requested the securing of a statement authorizing the purchase of the insurance. The letter indicated that December 30, 1959 would be the deadline, after which the files would be closed. On December 30, 1959 the file sheet on the DeWall application in defendant's home office was stamped "canceled." On the same day defendant wrote directly to DeWall indicating that the application had been canceled due to plaintiff corporation's failure to indicate its authorization of the purchase. Also on this same day, December 30, plaintiff's board of directors authorized the purchase of $40,000 of insurance on the life of DeWall. On

the next day, December 31, 1959, the field agent of defendant wrote the home office to "Please expedite issuance of policy so we can collect first quarterly premium and place policy in force." and enclosed the minutes of the meeting authorizing the purchase and a health certificate signed by DeWall. The request was for a 5 Year Convertible and Renewable Term.

On January 7, 1960, a 5 Year Term with conversion to Ordinary Life policy was issued. To it was attached and incorporated by reference the original application dated August 3, 1959. The policy was dated on its face, November 5, 1959, as requested, and expressly provided for premium payments "on the 5th day of February, May, August, November in every year. * * *"

The policy was accepted and the premium paid for November 1959. During the next year premiums were duly paid for the four quarters of 1960 and for February 1961. However, the May 5, 1961, premium was not paid. On June 27, 1961 DeWall received from defendant notification that the policy had lapsed but that an application for reinstatement would be considered. Such an application was made, and on August 7, 1961 DeWall was informed that the application had been approved and reinstatement effected. On December 4, 1961 DeWall died of a heart attack. Plaintiff claimed the face value of the policy. Defendant's primary defense was that DeWall, in his application for reinstatement following the June 27th lapse, made material misstatements which voided coverage under the policy. The trial court found that material misstatements were in fact made, which finding is not challenged on this appeal. In response to this defense of policy lapse, however, plaintiff claimed that no lapse actually took place, because of the predating of the policy at time of issue, and, of course, if there were no lapse there would be no necessity for reinstatement. On this issue, too, the trial court found for defendant, and it is on

1. § 31.1519 South Dakota Code of 1939.

this adverse finding and judgment that plaintiff appeals.[2]

Plaintiff argues herein that the August 3, 1959 application was clearly canceled by the insurance company, both by letter to DeWall and by stamping its own file. Thus the communication of December 31, 1959 requesting the issuance of the policy was a new "original application." The policy, then, must run from December 31, 1959 or a later date in that the existing South Dakota law prohibited the dating of insurance policies prior to the "original application."[3] It is undisputed that if the policy ran from this or a later date there would be no lapse in coverage, the application for reinstatement must be disregarded, and plaintiff, therefore, would be entitled to recover the amount of insurance the premium payments would have purchased at age 50 rather than DeWall's insurance age of 49 on the policy date, regardless of any misrepresentations in the reinstatement application.

The basis of plaintiff's argument is that the August 3rd application was in fact canceled and that the December 31st communication must be considered as the "original application." Without this foundation plaintiff's primary argument for reversal collapses.

The trial court found against plaintiff on these arguments. We have examined the record and the arguments of both parties and are in full accord with the ruling of the trial court.

The August 3rd application was the only application received by the defendant, and it was on the basis of the facts and information contained in this application that the policy ultimately was issued. The defendant, contrary to plaintiff's argument, was perfectly free to act on the August 3rd application. Its so-called act of "cancelling" the application, as the trial court found, was but one in a long series of attempts to speed the final issuance of the policy. The stamping of the file may be considered as no more than a bookkeeping entry that had no binding legal significance. Defendant was perfectly free to ignore this "cancellation", as it did, and issue a policy on the August 3rd application if it so pleased.

The policy was, in fact, issued on the basis of the August 3rd application. The application was physically attached to the face of the policy and by specific terms incorporated as part of the policy itself.

The defendant on October 13, 1959, after evaluating the medical examinations, accepted the application for insurance as a sub-standard risk and agreed to write a 5 Year Term, which converts to Ordinary Life at the end of five years instead of the requested 5 Year Renewable and Convertible; and again called to the attention of the agent and DeWall the necessity of securing a corporate letter required by the South Dakota law. Any delay or procrastination after this date was entirely of the plaintiff's own choice, as was the date of the policy.

The letter of December 31st was written, not by the insured, but by defendant's own agent. It applied for nothing,

2. The defendant's actuary testified that if this policy had been dated on or after December 30, 1959, instead of November 5, 1959, the premium payments as made, would have continued the policy in force until after the date of death of the insured. We make no attempt to reconcile the quarterly payments with this conclusion, but accept it as correct since there must be other credits available that would operate to extend the policy in force for the period indicated.

3. § 31.1610, South Dakota Code of 1939. "No policy of life insurance * * * shall be issued or delivered in this state, * * * if it contain any of the following provisions: * * * (3) A provision by which the policy shall purport to be issued or to take effect before the original application for the insurance was made, if thereby the assured would rate at an age younger than his age at date when the aplication was made according to his age at nearest birthday; * * * "

This rule has been changed by the 1963 Session of the South Dakota Legislature. See Chapter 211, page 242 Session Laws of 1963.

only requested action on the August 3rd application. It contained no facts or information necessary for the issuance of the policy, nor was it treated by either of the parties as a formal application for insurance.

█ We believe the trial court correctly concluded that the "original application" was the August 3rd application and that it was not subsequently canceled. The November 5, 1959 date on the policy, being patently not prior to August 3, 1959, was perfectly proper under the existing South Dakota law.

As a second argument, plaintiff points to the terms of the policy which state that "no insurance shall be considered in effect under the application herein referred to unless and until the full first premium is paid and a policy manually delivered and accepted by the applicant * * * " It then points to the face of the policy which requires premiums to be paid on the 5th day of February, May, August, and November. It argues therefrom that there is an ambiguity as to when the premiums are to be paid. Should they run from the date of delivery, or the dates found in the policy? Resolving this "ambiguity" in its favor, plaintiff argues that since the policy did not come into effect until some time after January 7, 1960, the premiums were payable from that date. Consequently, argues plaintiff, there was no lapse in the policy necessitating reinstatement. Plaintiff cites as supporting this position, Haynes v. Midland Nat. Life Ins. Co., 60 S.D. 212, 244 N.W. 110 (1932).

█ It is undisputed that ambiguities in a policy of insurance must be resolved in favor of the insured. However, before ambiguities can be resolved there must first exist an ambiguity. Wisconsin Hydro Electric Company v. Equitable Fire and Marine Insurance Company, 233 F.2d 313 (8 Cir. 1956). The South Dakota court in the Haynes case found such an ambiguity from the fact that even though there was a date on the policy, there was to be no coverage until the premiums were paid and the policy delivered, and from the fact that

"there was no day fixed for the payment of a monthly premium." Though a majority of the states would probably hold that the date found in the policy would govern the day premiums fall due (See, Annot. 44 A.L.R.2d 472), under the circumstances the South Dakota court held that the day on which the policy was actually delivered, not the day on the policy, determined the day for payment of premiums. The Haynes decision also found ambiguity from the fact that there was no apparent quid pro quo for the prior date on the policy, noting that "more than a monthly premium period had elapsed before the policy was put into effect."

In the case before us, unlike the Haynes case, the parties clearly agreed that premiums were due on the 5th day of February, May, August, and November. This was in addition to the November 5th date on the face of the contract. The Haynes decision by specifically referring to the absence of any clear statement as to when the premiums were due, tacitly recognized that if such a clear statement were present, as here, there would be no construable ambiguity. Also unlike the Haynes case, there is herein a definite quid pro quo for the date earlier than the delivery. We find in addition to one month of actual protection secured by the initial premium payment, the benefit of an earlier insurance age which would reduce future premiums, and a faster activation of the noncontestability clause found in the policy. The plaintiff also had the opportunity to keep the policy in force by simply paying the premiums on the dates specified.

█ An early South Dakota case held that where there was a specific date on the face of the policy and a provision for annual payment of premiums on this date, in determining the day of lapse, this date on the face of the policy took precedence over an earlier date of actual coverage (policy approval date) that was not noted in the policy and unknown to the insured. Lyke v. First Nat. Life & Accident Ins. Co., 41 S.D. 527, 171 N.W. 603 (1919). This case is consistent

with our holding herein, to the effect that unambiguous dates for premium payments called for by the contract and agreed to by the parties will be enforced by the courts.

 There is no question in the present case of the "effective date" of the policy. See Beister v. John Hancock Mutual Life Insurance Company, 356 F.2d 634 (8 Cir. 1966). The only question is the date premiums were to be paid to avoid a lapse in coverage. These dates were specifically decided and clearly set out in the insurance contract. We cannot write another contract for the parties expressing dates contrary to those established by the parties. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416 (1932); Peacock & Peacock, Inc. v. Stuyvesant Insurance Company, 332 F.2d 499 (8 Cir. 1964); Hemmer-Miller Development Co. v. Hunson Ins. Co. of New York, 59 S.D. 129, 238 N.W. 342 (1931). When the intention of the parties is clear and unambiguous, as it is here, the Court may not assume an ambiguity. It is the duty of the Court to give effect to this intention. Indemnity Insurance Company of North America v. Pioneer Valley Savings Bank, 343 F.2d 634 (8 Cir. 1965); Miller v. St. Paul Fire & Marine Ins. Co., 26 S.D. 454, 128 N.W. 609 (1910). According to the contract, the premiums were due November 5, February 5, May 5, and August 5. Failure to pay on these dates, plus any grace period would cause a lapse in coverage.

In determining the initial span of coverage from the setting forth of what amounts to two dates on the policy (the date of issue and the date of effective coverage), some policies may well have some ambiguity. However, in the case before us, even if we assume *arguendo* that some ambiguity existed as to the initial span of coverage, as the years pass this initial ambiguity fades. The exact date of delivery is unrecorded on the policy and perhaps is long forgotten; all that remains is the obvious date on the policy which calls for payment. In such a situation the insured must surely realize that he is expected to pay the premiums on these dates, and if he fails to do so the policy is subject to lapse.

 It is our conclusion that the "original application" was August 3, 1959, that there was no cancellation of this application, and that the correspondence of December 31, 1959 did not constitute an original application so as to make the November 5 date come within the South Dakota prohibition against predating insurance policies. We believe the policy is clear, the intention is clear, and any conceivable initial ambiguity was cured by the passage of time and the payment of five quarterly premiums. The policy is not subject to doubts that must be resolved in plaintiff's favor. Under South Dakota law there was a lapse and the admitted misstatements used to secure a reinstatement of the policy void any coverage. The trial court committed no error in the consideration of this case.

Affirmed.